[S. F. No. 21291. In Bank. Nov. 9, 1964.]

BENJAMIN GOLDMAN et al., Plaintiffs and Respondents, v. ECCO-PHOENIX ELECTRIC CORPORATION, Defendant and Appellant.

Bronson, Bronson & McKinnon and Ernest M. Thayer for Defendant and Appellant.

John D. St. Clair, Edward J. McFetridge and Hauerken, St. Clair, Zappettini & Hines for Plaintiffs and Respondents.

TOBRINER, J.—We adjudicate here defendant corporation's appeal from a declaratory judgment decreeing that it is contractually bound to indemnify plaintiffs against liability for personal injuries suffered by one of defendant's employees. We hold that one who seeks indemnification from his own negligence must draft the instrument in specific, precise and unambiguous terms; the imposition of such an obligation cannot rest upon language which is as loose and obscure as that of the instant contract. Accordingly, plaintiffs cannot obtain indemnification in this case if their negligence contributed to the injury. Since the trial court rendered no findings on the issue of fault, we reverse the judgment and remand it for findings on the issues of the relation of plaintiffs' negligence, if any, and defendant's negligence, if any, to the employee's injuries.

Plaintiffs Goldman and Staggers (hereinafter Clovis), who operated as general contractors under the name of Clovis Construction Company, contracted with the City and County of San Francisco to build a firehouse. Defendant Ecco-Phoenix Electric Corporation (hereinafter Ecco) subcontracted with Clovis to do all the electrical work in the construction of the building.

While at the construction site, Butlar, the vice president and foreman for Ecco, fell from a second floor concrete platform in the "hose tower" of the uncompleted firehouse. At the time of the accident, contrary to Safety Order No. 1620

of the Division of Industrial Safety (Cal. Admin. Code, tit. 8, ch. 4, subch. 4 [Construction Safety Orders] art. 18, § 1620), no railing or covering protected the opening in the hose tower.

Butlar brought an action for personal injuries against Clovis. On the basis of the subcontract, Clovis demanded that Ecco defend and indemnify Clovis against any liability to Butlar. When Ecco refused so to defend or to acknowledge any indemnification obligation, Clovis filed the present action for a declaration of its rights under the subcontract. The trial court, while submitting no findings as to whether the negligence of Clovis or Ecco contributed to the accident, held Ecco obligated to hold Clovis harmless for Butlar's injuries.

The subcontract, which had been prepared and used by Clovis in all its subcontracts since 1956, consisted of a single sheet printed form, with typewritten insertions; the same form had been executed by all 25 of Clovis' subcontractors engaged in the construction of the firehouse. Paragraph "1" of the subcontract recites that Clovis has entered into a general contract with the city (referred to as the owner) to construct a firehouse in accordance with certain identified specifications and that the "Subcontractor acknowledges that he is familiar with the terms and conditions of said general contract."

Clovis contends that paragraph 2c[1] of the subcontract incorporates paragraph 12[2] of the general contract, thereby

---

[1]Paragraph "2" of the subcontract reads as follows:

"2. WORK TO BE PERFORMED: SUBCONTRACTOR HEREBY AGREES TO DO THE FOLLOWING:

"a. To furnish all labor, equipment, materials, supervision and appurtenances required for the work herein described.

"b. To comply with all provisions of the General Contract insofar as the same are applicable to the work referred to in this agreement.

"c. To be bound to Clovis Construction Co. in the same manner and to the same extent as Clovis is bound to the Owner under the General Contract, to the extent of work provided for in this agreement.

"d. All Electrical Work including but not limited to excavation Backfill, Covering, Inserts, reinforcing, Fixtures, Lamps, Motors, Panels, Switches, Tel System, Tv Antenna, etc., Reroute Existing Power Lines, Lighting, Pay all permits, fees and licenses. Submit Complete List of Materials and equipment for approval at once."

[2]The general contract between Clovis and the city provides:

". . . 12. The Contractor [Clovis] shall take and assume all responsibility for the work. The Contractor shall bear all losses and damages directly or indirectly resulting to him, to the City, or to others on account of the performance or character of the work, unforeseen difficulties, accidents or any other causes whatsoever.

"The Contractor shall assume the defense of and indemnify and save harmless the City and County of San Francisco, the Director of Public Works, and their officers and employees, from all claims, loss, damage, injury and liability of every kind, nature and description, directly or

obligating Ecco to indemnify Clovis for any claim which is directly or indirectly connected with the performance of the contract. Since Butlar was an employee of Ecco, Clovis urges the application of the hold-harmless clause requiring Ecco to indemnify and defend Clovis against any liability to Butlar regardless of whether the negligence of either party contributed to the injury.

Arguing that paragraph 2c limits its obligation to indemnify Clovis only to instances in which liability arises either from Ecco's failure to perform or from the negligent performance of the electrical work, Ecco denies that the scope of its indemnification liability extends to include situations in which an employee of Ecco suffers injury from the active negligence of Clovis or any of the other 25 subcontractors. Ecco urges the final argument that in the event the contract does provide indemnification of Clovis against its own negligence, such a provision violates public policy under Civil Code section 1668, citing *Tunkl* v. *Regents of the University of California* (1963) 60 Cal.2d 92 [32 Cal.Rptr. 33, 383 P.2d 441], and *Hanna* v. *Lederman* (1963) 223 Cal.App.2d 786 [36 Cal.Rptr. 150].

While arguing that its obligation to Clovis is limited to indemnifying Clovis from liability for injuries resulting from some act or omission in Ecco's own performance, Ecco, during the trial, recognized the ambiguity of paragraph 2c of the subcontract. As to the meaning of paragraph 2c, the trial court admitted testimony of the intent of the parties; the court found that Ecco intended to indemnify Clovis in the same manner that Clovis had agreed to indemnify the city without regard to negligence. Robert C. Weber, who executed the subcontract as president of Ecco, gave his interpretation of paragraph 2c as follows: ''That we would be bound to the Clovis Construction Company, well, just as it says, the same as they are bound to the City. In other words, *for our portion of the work,* we were bound to Clovis, the same 'hold harmless' type of agreement as Clovis was bound to the City for his portion of the work.'' (Italics added.) Benjamin Goldman, a partner of Clovis, testified that he understood the clause to mean that Ecco would protect Clovis from any

indirectly arising from the performance of the contract or work, regardless of responsibility for negligence; and from any and all claims, loss, damage, injury and liability, howsoever the same may be caused, resulting directly or indirectly from the nature of the work covered by the contract, regardless of responsibility for negligence.''

claim arising in connection with the electrical work under the subcontract.

Since we hold that the obligation to indemnify a party against his own negligence will not be imposed in this case in the absence of language which itself compels such a result, parol evidence as to the intent of the parties would not effectuate such liability. ▮ In the area of *implied* indemnity one who "personally participates in an affirmative act of negligence, or is physically connected with an act or omission by knowledge or acquiescence in it on his part, or fails to perform some duty in connection with the omission which he may have undertaken by virtue of his agreement" cannot obtain indemnification. (*Cahill Bros., Inc.* v. *Clementina Co.* (1962) 208 Cal.App.2d 367, 382 [25 Rptr. 301].)

▮ Although the cases have held that one may provide by agreement for indemnification against his own negligence (*Harvey Mach. Co.* v. *Hatzel & Buehler, Inc.* (1960) 54 Cal.2d 445 [6 Cal.Rptr. 284, 353 P.2d 924]; *Rosendahl Corp.* v. *H. K. Ferguson Co.* (1962) 211 Cal.App.2d 313 [27 Cal. Rptr. 56]; *Pacific Tel. & Tel. Co.* v. *Chick* (1962) 202 Cal. App.2d 708 [21 Cal.Rptr. 326]; *County of Los Angeles* v. *Cox Bros. Constr. Co.* (1961) 195 Cal.App.2d 836 [16 Cal. Rptr. 250]), the agreement for indemnification must be clear and explicit; the agreement must be strictly construed against the indemnitee.[3] ▮ In view of the general rule that an implied indemnity does not reach to protect the indemnitee from a loss to which his negligence has contributed, we must look at least for an express undertaking in the document that he is to do so. If one intends to do more than merely incorporate the general rule into the written document, he will be required to fix the greater obligation in specific terms. And the extent of the purported indemnitor's liability must be determined from an objective assessment of the language of the instrument.

*Vinnell Co., Inc.* v. *Pacific Elec. Ry. Co.* (1959) 52 Cal.2d 411, 415 [340 P.2d 604], illustrates this proposition. There the court held that in the absence of a specific agreement to protect the indemnitee against affirmative acts of its negligence the contract could not be construed to do so. The rail-

---

[3] "A contract of indemnity which purports to relieve the indemnitee from the results of a failure to exercise ordinary care, by himself or his employees, should be strictly construed, and will not be held to provide such indemnification, unless so expressed in clear and unequivocal terms. . . ." (42 C.J.S., Indemnity, § 12, p. 580. To the same effect see *Pacific Indemnity Co.* v. *California Electric Works, Ltd.* (1938) 29 Cal. App.2d 260, 271 [84 P.2d 313]; 26 Cal.Jur.2d, Indemnity, § 12, p. 342.)

road granted the indemnitor construction company permission to excavate and build across the railroad's yard a storm drain system for a flood control district. During the course of construction the railroad continued to operate in the yard and negligently switched a string of cars into the excavation. The agreement provided for indemnification from liability resulting directly or indirectly from the performance of the construction company's work on the property. The contract, however, did not expressly provide for indemnification against the active negligence of the railway; this court held that the construction company was not bound to indemnify the railroad. The court stated the rule to be that " 'where the parties fail to refer expressly to negligence in their contract such failure evidences the parties' intention not to provide for indemnity for the indemnitee's negligent acts.' (Anno. 175 A.L.R. 8.)"

Likewise, in *Pacific Indemnity Co.* v. *California Electric Works, Ltd.* (1938) 29 Cal.App.2d 260, 271 [84 P.2d 313], the court decreed that a provision requiring the subcontractor to "indemnify and save [the general contractor] harmless from and against any and all loss, damage, injury, liability . . . *howsoever caused*," (italics added) did not compel a finding that the subcontractor was bound to indemnify the general contractor against his own negligence.

Clovis cites *Harvey Mach. Co.* v. *Hatzel & Buehler, Inc.* (1960) 54 Cal.2d 445 [6 Cal.Rptr. 284, 353 P.2d 924], to vitiate the effect of *Vinnell,* but the court's statement in *Harvey* establishes distinctions between that case and *Vinnell* which in turn show that *Vinnell* applies here. In *Harvey* the owner of certain property contracted with the indemnitor general contractor that it construct upon the property a new industrial plant in its entirety. An employee of the contractor, while engaged in his duties on the premises, fell into an open elevator pit. Sustaining the indemnity agreement as a protection to the owner, the court held that "Where, as in the case at bar, the contractors had practical control of the structures on the premises, any negligence for the condition of the structures would obviously not be that of the owner alone. The accident, in these circumstances, was one of the risks, if not the most obvious risk, against which Harvey sought to be covered." (P. 448.)

The court notes the following distinguishing characteristics between the *Harvey* and *Vinnell* cases: in *Harvey* (1) "the indemnitee did not continue to maintain independent opera-

tions on the premises'' (p. 448); (2) ''The injuries did not result from some conduct or omission unrelated to the indemnitors' performance'' (*Id.*); (3) the indemnitee's breach of duty did not take the form of ''active, affirmative misconduct, but at most passive negligence—a failure to act in fulfillment of a duty of care . . . as the owner or occupier of land'' (*Id.*); (4) the misconduct did ''not relate to some matter over which the indemnitee exercised exclusive control.'' (*Id.*) All four of these factors, as in *Vinnell,* operate in the instant case in favor of the indemnitor, Ecco; *Vinnell* must therefore apply here.

 Specific language to spell out an indemnification agreement may be found in many contracts; such a provision is in common use; nothing prevented Clovis from setting it forth here. In fact Clovis' contract with the city, the underlying agreement here, contains such a specific provision, carrying the heading ''Responsibility of Contractor and Indemnification'' and reading in part as follows: ''The Contractor shall assume the defense of and indemnify and save harmless the City . . . from all claims, loss, damage, injury and liability of every kind, nature and description, directly or indirectly arising from the performance of the contract or work, regardless of responsibility for negligence; and from any and all claims, loss, damage, injury and liability, howsoever the same may be caused, resulting directly or indirectly from the nature of the work covered by the contract, regardless of responsibility for negligence.''

Instead of explicitly providing for indemnification in language similar to that which the city submitted to it, Clovis set out in its printed form the confused provision to which we alluded in the statement of facts. Thus section 2c states only that the subcontractor is ''to be bound to Clovis Construction Co. in the same manner and to the same extent as Clovis is bound to the Owner under the General Contract, *to the extent of work provided for in this agreement.''* (Italics added.) Upon this section Clovis founds its whole contention that it enjoys an indemnification agreement as to its own negligence. Yet this contention must rest upon two gaping holes.

In the first place, the disputed provision does not so much as mention the word ''indemnity'' or ''indemnification''; the language could as properly be considered to require of Ecco only the proper *performance* of its work, without any obligation at all as to indemnification. The lack of specificity as to this matter becomes all the more glaring in the light

of the precise indemnification provision which Clovis itself signed with the city and which it now would impose upon Ecco by means of its own vague subcontract.

In the second place, the words ''to the extent of work provided for in this agreement'' pose a parallel dilemma. The parties reach diametrically opposed interpretations of it. Ecco would confine the words to a loss related to its own obligation to install its *electrical work* without negligence. Clovis contends that it includes any liability that arises during the *course of the performance* of the electrical work; that the obligation attaches in a strict *sine qua non* sense to the extent that Ecco must indemnify Clovis even if the loss results from a cause which has no relation whatsoever to the electrical work. Thus Clovis' interpretation requires indemnification even if Ecco's relation to the damage lies only in the fact that one of its employees suffered injury during his presence upon the premises. Clovis' interpretation would lead to the conclusion that a subcontractor, who agreed to install some minor electrical equipment for a comparatively nominal fee, could be liable for any amount of damage, no matter how extensive, sustained by one of its employees, even though the injury were a direct result of Clovis' own negligence.

We can conceive that the provision be read, as Ecco claims, to limit Ecco's indemnification to a loss which directly related to its work and resulted from a breach of a duty arising from the performance of that work. In *Indenco, Inc.* v. *Evans* (1962) 201 Cal.App.2d 369 [20 Cal.Rptr. 90], the general contractor had undertaken the construction of certain school buildings for the county and the district; the subcontractor, Evans, had agreed to install the roof of one building; the subcontractor executed a specific indemnity agreement by which he assumed *''all the obligations and responsibilities that the Contractor assumes toward the Owner* . . . insofar as applicable . . . [to] the work to be performed under this Subcontract.''* (P. 371.) The subcontractor's foreman fell from the roof while installing it because of the absence of a railing required by law. Concluding that the subcontractor must indemnify the contractor, the court stated: ''[T]he injury resulted from *conduct directly related to the work of Evans* and amounted to an affirmative breach of a legal duty to provide a railing. . . . [T]he *duty to provide a railing was a delegable one,* which Indenco, Inc. as general contractor, could lawfully delegate to its roofing subcontractor, Evans.

*Under these circumstances,* we must conclude that the parties knowingly bargained for the very protection here in issue.'' (P. 376; italics added.)

*Patrick J. Ruane, Inc.* v. *Parker* (1960) 185 Cal.App.2d 488 [8 Cal.Rptr. 379], presents another case which similarly interprets the subcontractor's agreement in a limiting fashion. There the plastering and lathing subcontractor agreed to be bound by ''the general conditions of the aforesaid specifications and all conditions'' of the prime contract ''insofar as they are applicable to this particular work.'' (P. 497.) The general contractor took the position that, as to the plastering, the contract required the subcontractor to stand in the prime contractor's ''shoes, for all purposes *vis-à-vis* the county.'' (*Ibid.*) Holding that the general contractor's contention disregarded the limiting language of the subcontract, the court stated that although a contract conceivably could impose so great an obligation, ''we would be reluctant so to hold in any case where the language does not compel such a result.'' (P. 498.)

We need not, however, determine whether Clovis' or Ecco's interpretation of paragraph 2c is correct. We conclude only that an indemnification agreement calling for financial protection against one's own negligence cannot rest upon language so loose and obscure as that of the instant contract. The parties themselves encounter a deep disagreement as to its meaning. In the special circumstances of this undertaking of the subcontractor to hold the contractor harmless for its own negligence and in the use of this printed form contract for that purpose, we hold that the imposition of the obligation must be clear and express.

Assuming that the agreement provided that Ecco indemnify Clovis from its own negligence, we cannot, however, accept Ecco's contention that such indemnification would violate public policy and therefore fail under the reasoning of *Tunkl* v. *Regents of the University of California* (1963) 60 Cal.2d 92 [32 Cal.Rptr. 33, 383 P.2d 441], and *Hanna* v. *Lederman* (1963) 223 Cal.App.2d 786, 792 [36 Cal.Rptr. 150]. Clovis does not seek *exculpation* from liability to Butlar but rather *indemnification* from Ecco for such potential liability. The indemnification agreement resembles an insurance agreement; indeed, the real situation here appears to be that Clovis maintains insurance against liability to Butlar and Clovis' insurer now attempts to transfer that liability to Ecco and Ecco's insurer.

Various strains of consideration apply here to render the

policy reasons in *Tunkl* and *Hanna* inapplicable. It is true that the indemnification contract resembles the insurance contract and that we would interpret the insurance policy against the draftsman, but a major reason for so reading such a policy emanates from its role as an adhesion contract, particularly from the status of the insurance company as the dominant bargainer in dealing with the public. These characteristics do not appear here; the situation is in fact reversed: the general contractor takes bids from competing subcontractors, and, if anything, the general contractor occupies the better bargaining position. As the court said in *Indenco, supra,* "The contract betweeen Indenco, Inc., and Evans here is not like an insurance policy to be construed against one party. Rather, its terms were admittedly arrived at by negotiations between two parties." (P. 375.)

Further, and more important, the general contractor, not the subcontractor, *drafted* the printed form of agreement upon which the general contractor relies for reimbursement for its own negligence. While *Tunkl* does not purport to *invalidate* indemnification agreements, the policy reasons which prompted *Tunkl* do point to the need for *precision* in an agreement which would impose the obligation of indemnification. (See *Steven* v. *Fidelity & Cas. Co.* (1962) 58 Cal. 2d 862, 879 [27 Cal.Rptr. 172, 377 P.2d 284].)

Thus we cannot uphold the ruling that the subcontract required indemnification if Clovis' negligence contributed to the injury. The provision would apply only if the injury resulted solely from Ecco's negligence.

We note that the trial of the instant case will duplicate aspects of the issues of negligence which will arise in the Butlar action against Clovis. Such duplication may be avoided by the stipulation of all of the parties, with the approval of the trial court, for the consolidation of the two trials.

The judgment is reversed, and the case remanded for a determination of whether the negligence of Clovis, if any, contributed to Butlar's injuries, or whether the negligence of Ecco, if any, solely caused Butlar's injuries.

Traynor, C. J., McComb, J., Peters, J., Peek, J., Mosk, J., and Schauer, J.,* concurred.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.