[Civ. No. 34818. Second Dist., Div. Five. July 22, 1970.]

DART TRANSPORTATION SERVICE et al., Plaintiffs,
Cross-complainants and Respondents, v.
MACK TRUCKS, INC., Defendants, Cross-complainants and Appellants;
TRUCK INSURANCE EXCHANGE et al.,
Cross-complainants and Respondents;
ZURICH INSURANCE COMPANY et al.,
Cross-defendants and Appellants.

838

**COUNSEL**

Haight, Lyon & Smith, Charles B. Smith and Henry F. Walker for Defendants, Cross-complainants and Appellants and for Cross-defendants and Appellants.

Hagenbaugh, Murphy & Davies, Sigurd E. Murphy and Ellis J. Horvitz for Plaintiffs, Cross-complainants and Respondents, and for Cross-complainants and Respondents.

**OPINION**

**FRAMPTON, J.*—**

*Preliminary Statement*

The parties to this appeal are (1) appellants Mack Trucks, Inc., and Mack Financial Corporation (hereinafter referred to as Mack) and Zurich Insurance Company (hereinafter sometimes referred to as appellant Zurich), and (2) respondents Dart Transportation Company, Dart Transportation Service, and Dart Equipment Corporation (hereinafter sometimes referred to as Dart), and Truck Insurance Exchange (hereinafter referred to as respondent Exchange).

By its findings, conclusions and declaratory judgment, the trial court determined that the Exchange "Truckmen's Comprehensive Policy," issued to respondent Dart and by certificate naming appellant Mack as an additional insured, provided no coverage of appellant Mack in respect to the accident hereinafter described; that the Exchange policy was, in any event, "excess to the Zurich policy" issued to appellant Mack; that respondent Dart was not liable under its contractual agreement to indemnify and hold appellant Mack "harmless from and against any and all claims for personal injury or property damage arising out of the use or operation of the vehicle(s)"; and that respondent Dart had not breached its contract to carry and keep in force insurance (including "public liability, property damage"), entered into between respondent Dart and appellant Mack.

The principal contentions of appellants are that (1) the Exchange policy provides coverage of appellant Mack as to the accident; (2) the Exchange policy is not "excess" to the Zurich policy, and (3) if the Exchange policy

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

provides no such coverage of appellant Mack, then respondent Dart is responsible for the ensuing loss under its agreement to indemnify and hold harmless and also by reason of breach of its agreement to carry and keep in force the insurance coverage.

### Statement of Facts

Appellant Mack Trucks, Inc. was, at all times pertinent, engaged in the business of manufacturing and selling motor trucks and tractors.

On August 10, 1960, appellant Mack Trucks, Inc. entered into a written agreement with respondent Dart Equipment Corporation "for the lease with option to purchase of ten MACK Model G73LT tractors including one known as and referred to in these proceedings as tractor No. 1658." The agreement provided for monthly "rental" payments totaling the sale value of the vehicles plus deferred rental or time price differential and, among other things, further provided that when the total rent was paid by respondent Dart the latter had the option to purchase "for the sum of $1.00 for each vehicle."

Dart Equipment Corporation received the tractors and the vehicles were registered with the Department of Motor Vehicles by means of the Dealers Report of Sale and Application for Registration. These documents showed Dart Equipment Corporation as the purchaser and registered owner, and Mack Trucks, Inc. as the legal owner of the tractors.

Approximately nine months after the sale and registration of the vehicles, one D. M. Hall, an employee of Dart Transportation Service, on May 12, 1961, was operating tractor number 1658 in the course and scope of his employment, using the vehicle in the business of Dart Transportation Company, Dart Transportation Service, and Dart Equipment Service. At that time and place, Hall lost control of the vehicle when it became unmanageable because of the defective steering apparatus of the vehicle, causing it to strike a light post, wrecking the vehicle and causing personal injuries to Hall. There was no collision with any other vehicle.

Hall sued Mack Trucks, Inc. to recover damages for personal injuries, basing his suit on alleged negligence, breach of warranty, and upon strict liability. Upon trial by jury he recovered judgment against Mack Trucks, Inc. for $110,000 plus $325.25 costs, which sums, plus interest of $990.29 were paid by Zurich, the insurance carrier of Mack. Dart Equipment Corporation and Dart Transportation Service sued Mack Trucks, Inc. for property damage to the vehicle wrecked in the accident, basing suit on alleged breach of warranty and upon strict liability. Dart recovered judgment against Mack in the sum of $16,881.61, which was paid by

Zurich. In defense of the consolidated damage suits, Zurich additionally paid defense expenses amounting to $6,752. The total of the amounts paid out by Zurich is the sum of $134,949.15.[1]

The trial court found that "the liability" of Mack to Hall and to Dart in the damage actions "is manufacturer's strict liability and breach of warranty liability in respect to the defective steering apparatus of the tractor No. 1658, . . ."

Over objections and motions to strike, the trial court received in evidence the testimony of Messrs. Dedeaux, Bowers and Mittan.

Raoul Dedeaux, president of the three Dart companies, testified in part that in the month of August 1960, the lease agreement was signed at a meeting with two Mack representatives, one being Mr. C. E. Cole, who was the head of Mack's business on the West Coast; at that time Mr. Cole requested that Dart "obtain some form of insurance for the benefit of Mack Trucks, Inc." Mr. Dedeaux testified further that "Mr. Cole stated that since they could conceivably have owner's liability or some form of secondary liability that they wanted to have evidence that we did have insurance which would cover owner's liability or secondary liability for any acts that we might perform of negligence in the operation of our business. . . . We said we would so furnish that insurance"; at that time, the three Dart companies were the named insured in the policy of Exchange and Mr. Dedeaux instructed Dart's operating manager, Mr. Bowers, to arrange for such insurance with Exchange.

Fred E. Bowers testified in part that he contacted Mr. Mittan, representative of Dart's insurance carrier, Exchange, and "requested owner's liability insurance or secondary liability insurance that would protect Mack, for instance, arising out of the negligent use of certain vehicles that we had under lease." Mr. Bowers testified further that Dart had insurance with Exchange covering public liability, property damage, fire, theft and collision; he was getting the same type of coverage for Mack, the same as Dart had for itself; he did not request other than "owner's liability or secondary liability while the trucks [were] used by Dart Transportation."

Ralph L. Mittan testified in part that Mr. Bowers called him in respect to insurance for the benefit of Mack. "He asked for a Certificate of Insurance and also requested that Mack be added as an additional insured for owner's liability—secondary liability that has been referred to—for liability

---

[1] The cross-complaints herein were filed in the damage suit brought by Dart against Mack. Each cross-complaint alleges the existence of the Hall damage suit against Mack and seeks declaratory relief in regard to it as well as in regard to the Dart damage suit.

arising out of the use of these vehicles by Dart Transportation because of the lease arrangement." He ordered the insurance and had a Certificate of Insurance added to the Exchange policy to carry this out. The certificate is the same as an endorsement to the policy and is so treated by Exchange. No charge was made for the issuance of the certificate.

The certificate of insurance is titled "Combined Certification of Primary Insurance with Truck Insurance Exchange and Excess Insurance with Mid-Century Insurance Company." The three Dart companies are designated therein as the "Named Insured." The certificate reads "This certification is subject to all terms, conditions, and limitations of the primary policy and excess policy(ies) referred to above. It applies only to such and so many of the below listed coverages which are preceded by the word 'covered.' It is furnished as a matter of information only and does not change, modify or extend the insurance contracts of the primary or excess insurers in any way. Any prior certificates or certifications are hereby declared null and void."

The primary policy and excess policy are referred to and designated by the numbers of the respective policies. The coverages designated in the certificate are "Bodily Injury Liability"; "Property Damage Liability"; "Fire and Theft"; "Collision" and "Cargo."

The amounts of the coverages are set forth in the certificate. The certificate further provides that it is "Issued to Mack Truck Inc. who is hereby made an additional insured but only as respects liability arising out of the use of automobiles in the business of the named insured, by the named insured, his employees or agents."

The insurance policy issued by respondent Exchange is titled "Truckmen's Comprehensive Policy." The declarations show the named insured to be "Raoul Dedeaux DBA: Dart Service and Dart Transportation Service." The coverages are, in pertinent part, shown as follows: [See following page.]

The "Insuring Agreements" of the Exchange policy provide in pertinent part that the insurer, subject to the limits of liability, exclusions, conditions and other terms of the policy, agrees, under "Coverage A-Bodily Injury Liability [ - ] To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person." The "Insuring Agreements" further provide under "Coverage B-Property Damage Liability [ - ] To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof."

| Coverages | Limits of Liability | Covered or Not Covered |
|---|---|---|
| A—Bodily Injury Liability | See END | Covered |
| Products Hazards (as defined) | See END | Covered |
| B—Property Damage Liability | See END | Covered |
| Products Hazards (as defined) | See END | Covered |
| C&D—Fire, Lightning & Transportation and Theft | Actual Cash Value Less NIL Deductible | Covered on trucks, tractors and trailers |
| F—Collision or Upset | See END | Covered |
| H—Cargo Legal Liability | See END | Covered |

The term "Products Hazards" as used in the Exchange policy is defined therein in pertinent part as relating to "goods or products manufactured, sold, handled or distributed, by the named insured. . . ." The policy also provided that it did not apply "to liability assumed by the Insured under any contract or agreement except a contract as defined herein." The word "contract" as used in the policy is defined as "a warranty of goods or products, a lease of premises easement agreement, agreement required by municipal ordinance, sidetrack agreement or elevator or escalator maintenance agreement."

It was stipulated at trial that Mack Trucks, Inc. was the manufacturer of the 10 tractors covered by the lease agreement, and that Mack prepared the agreement. The agreement provided, among other things, that Dart was to have an option to purchase the vehicles, but until exercise of the option and full payment, Dart would not obtain a bill of sale and legal title would remain with Mack. As of the time when tractor number 1658 was demolished in May of 1961, legal title, under the contract, remained with Mack. Under the terms of the lease, Mack furnished a "manufacturer's standard vehicle warranty" to Dart.

Under the terms of the lease, Dart undertook to keep in force at its own expense "insurance on the vehicle(s) in insurance companies approved by the Lessor against loss or damage by fire, theft, public liability, property damage, and collision ($500.00 deductible) in an amount equal to the full insurable value thereof, with loss, if any, payable to the Lessor and/or its assigns as its interest may appear, it being agreed that the Lessor may carry such insurance if the Lessee fails to do so, and may add to the rental hereunder the cost of the same, which the Lessee hereby agrees to pay on the next ensuing rental installment date."

The lease also provided that "The Lessee shall indemnify and hold the Lessor harmless from and against any and all claims for personal injury or property damage arising out of the use or operation of the vehicle(s)."

Counsel for Mack, in addressing the court concerning this indemnity agreement stated: "MR. SMITH: When we quit, your Honor, I was talking with respect to the indemnity agreement, and I think that the Court is right. It is a question of the intent of the parties. The only thing in that connection that we can point to here is that by the very terms of the arrangement between the parties, whether you want to call it a lease or whether you call it, as I feel is more proper, a conditional sales contract, that the operator, Dart, has the control of the vehicles. The only liability that the parties would contemplate, it seems to me, would be liability based on the operation of the trucks, and under those circumstances, Mack would have no control, if it were a third party situation, whether Dart hired a competent driver or an incompetent one, whether the Dart maintenance was adequate or was inadequate. The trucks are away and out of Mack's control.

"Now, we come back again to an argument as to the cause of these particular actions, the Hall case, the Dart case and the Department of Public Works action. As I say, the defect in the truck isn't a defect in a vacuum. The truck was being used, being operated, had been operated by the Dart employees for some time. It seems to me that under those circumstances that the general terms of a hold harmless agreement should protect Mack in any event under the holding of the Harvey Machine case."[2]

[2]*Harvey Machine Co.* v. *Hatzel & Buehler, Inc.,* 54 Cal.2d 445 [6 Cal.Rptr. 284, 353 P.2d 924]. In this case it was held that an agreement by construction contractors to indemnify and hold the owner harmless against liability, including all costs and expenses, sustained by any person or persons including employees of the contractor and arising from use of the premises or services of the owner was intended to indemnify the owner from its own (assumed) breach of duty, where the contractors, who undertook to construct a new industrial plant in its entirety for the owner, had practical control of the structures on the premises so that any negligence for condition of the structures would obviously not be that of the owner alone, and where the accident,

In the same vein, the court asked: "In this particular case before us now, doesn't it seem that the parties never intended that this indemnity agreement would be to protect Mack against its own negligence in manufacture, which would redound to the direct disadvantage and injury of Dart. Did Dart intend to give up any cause of action that it might have for negligent manufacture?" To this inquiry, counsel for Mack replied: "No, I suppose they didn't. I don't think this specific type of thing was in the contemplation of the parties. What they are contemplating is injury or damage in the use of the trucks."

Again, when the court asked counsel for Mack whether he thought it ever entered into the mind of Mack or Dart that Mack wanted protection against manufacturer's liability for defects in the articles sold, counsel replied: "I don't think that thought ever crept up on either one of the parties involved, and the only thing I still want to point out is that when we talk about manufacturer's liability, we are simply talking about a form of negligence, we are talking about acts or omissions which result in liability. There is no such separate tort as manufacturer's liability. A manufacturer may be strictly liable in tort for a defect in his machine, a defect in the manufacture or design."

Mack carried a comprehensive liability policy with Zurich which included coverage for manufacturer's strict liability and liability based upon breach of warranty. The limits of liability under this policy are set forth as $200,000 for bodily injury for each person and $500,000 for each accident. Liability for property damage was limited to $100,000.

Schedule B of the Zurich policy under the heading "Owned Automobiles," describes the automobiles covered by the policy as being "per survey on file with the company." In response to written interrogatories, received in evidence, appellants were asked if the 10 leased vehicles, including tractor number 1658, were "surveyed or inventoried or otherwise designated as being an owned automobile listed in Schedule B as being 'per survey on file with company'?" In reply, appellants stated: "Yes, as policy provides automatic coverage in respect of all 'owned' automobiles."

Appellants were further asked if the 10 leased vehicles were "owned by Mack Trucks, Inc. in May of 1961?", to which they replied "Yes."

The Zurich policy contained an "other insurance" clause providing for

---

which occurred when an employee of the contractors fell into an open elevator pit which was part of the structure connected with the indemnitors' performance, and concerning which the indemnitors undertook at least some responsibility for their employee's safety by agreeing to comply with all pertinent provisions and safety requirements of federal and state laws, building codes and regulations, was one of the risks, if not the most obvious risk, against which the owner sought to be covered.

proration of the loss with other valid and collectible insurance, except that with respect to loss arising out of the use of a non-owned automobile, the Zurich policy was declared to be excess over other valid and collectible insurance. The Exchange policy contained an "other insurance" clause which, so far as pertinent here, provides that the Exchange policy shall be excess over other available insurance.

### Discussion of the Applicable Law

It is the general rule that an insurance company has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected. (*Continental Cas. Co.* v. *Phoenix Constr. Co.,* 46 Cal.2d 423, 432 [296 P.2d 801, 57 A.L.R.2d 914].) It is also a general rule that the intent and meaning of the parties is far more important than the strict literal sense of the words used in the contract. For that reason it is equally important to consider the subject matter of insurance and the purpose or object which the parties had in view at that time. It is also proper to consider the business of the parties, the circumstances surrounding the making of the contract, the situation of the property, and all other conditions which have a legitimate bearing upon the intention of the parties. (Cf. *Pacific Gas & Elec. Co.* v. *G. W. Thomas Drayage & Rigging Co., Inc.,* 69 Cal.2d 33, 39-40 [69 Cal.Rptr. 561, 442 P.2d 641]; *Underwriters at Lloyd's of London* v. *Hunefeld,* 230 Cal.App.2d 31, 39 [40 Cal.Rptr. 659].)

In the case at bench the circumstances surrounding the making of the contract are as follows: Mack was the manufacturer of the tractor found to have a defective steering apparatus. Dart was the lessee of the defective tractor. Mack, the manufacturer of the tractor, found it necessary to insure itself against strict liability of the manufacturer, and obtained full coverage of such liability from Zurich. Dart was in the transportation business and was not in need of coverage for strict liability of the manufacturer. Dart carried insurance with Exchange covering its liability for damages to persons or property which might result from the negligent operation of the vehicles in the course of its business.

In the foregoing circumstances it was proper for the trial court to receive extrinsic evidence bearing upon the intent of the parties in making Mack an additional insured under Dart's policy with Exchange. This evidence disclosed that Mack did not ask Dart to obtain coverage for the manufacturer's strict liability of Mack, but only sought coverage for any vicarious liability of Mack arising from the negligence of Dart in the operation of the leased vehicles in the business of Dart. We are of the opinion that there is substantial evidence to sustain the trial court's finding that the Exchange policy and the certificate of insurance issued thereunder to Mack did not

provide coverage to the latter for manufacturer's strict liability or breach of warranty liability.

*Agreement to Indemnify*

█ It is provided in the lease agreement that "The Lessee shall indemnify and hold the Lessor harmless from and against any and all claims for personal injury or property damage arising out of the use or operation of the vehicle[s]."

Appellants urge that, under this provision, Dart is obligated to indemnify Mack for Mack's liability upon the Hall and Dart judgments. They seek to construe the general language of the indemnity agreement in such a way that Dart, Mack's customer in the purchase of the vehicles, will be obligated to indemnify Mack against Mack's strict products liability or for breach of warranty liability. █ While an action based upon a manufacturer's strict liability or breach of warranty liability does not sound in negligence, we believe, upon a parity of reasoning, that the rule of construction applicable to an agreement where one seeks indemnification from his own negligence is equally applicable here. This rule is set forth in *Goldman* v. *Ecco-Phoenix Elec. Corp.*, 62 Cal.2d 40, 41 [41 Cal.Rptr. 73, 396 P.2d 377], as follows: "We hold that one who seeks indemnification from his own negligence must draft the instrument in specific, precise and unambiguous terms; the imposition of such an obligation cannot rest upon language which is as loose and obscure as that of the instant contract."[3] The court went on to say at page 44: "Although the cases have held that one may provide by agreement for indemnification against his own negligence [citation], the agreement for indemnification must be clear and explicit; the agreement must be strictly construed against the indemnitee. In view of the general rule that an implied indemnity does not reach to protect the indemnitee from a loss to which his negligence has contributed, we must look at least for an express undertaking in the document that he is to do so. If one intends to do more than merely incorporate the general rule into the written document, he will be required to fix the greater obligation in specific terms. And the extent of the purported indemnitor's liability must be determined from an objective assessment of the language of the instrument." (See also *Vinnell Co.* v. *Pacific Elec. Ry. Co.*, 52 Cal.2d 411, 414-415 [340 P.2d 604].)

█ Here, the lease agreement containing the indemnification clause was prepared by Mack, and its provisions must be construed against it. Mack had obtained full coverage against its manufacturer's strict liability

---

[3]The indemnity agreement in *Goldman* appears to be much broader than the indemnity agreement here under consideration. See notes 1 and 2 on pages 42 and 43 of *Goldman*.

and breach of warranty liability under its policy of insurance with Zurich. It had no reason, therefore, to seek indemnity for damages arising out of such liability from its customer, Dart. We must assume, also, that Mack was aware that a manufacturer is strictly liable in tort for injuries resulting from a defectively manufactured product, and that the manufacturer may not limit or abrogate such liability by contract. (Cf. *Elmore* v. *American Motors Corp.,* 70 Cal.2d 578, 585, 586 [75 Cal.Rptr. 652, 451 P.2d 84]; *Vandermark* v. *Ford Motor Co.,* 61 Cal.2d 256, 263 [37 Cal.Rptr. 896, 391 P.2d 168].) We are of the opinion that the language of the indemnification agreement, coupled with the circumstances under which it was executed did not create, and was never intended to create, an obligation on the part of Dart, a consumer of the article who is within the class the doctrine of strict liability is designed to protect, to indemnify Mack for damages to person or property resulting from defects in the manufacture of the leased vehicles. (Cf. *Price* v. *Shell Oil Co.,* 2 Cal.3d 245, 256-258 [85 Cal.Rptr. 178, 466 P.2d 722].)

### Obligation of Dart Under the Lease to Furnish Insurance for Mack

Appellants contend that Dart, under the lease agreement, obligated itself to carry and keep in force insurance protecting Mack as to public liability and property damage; that the losses here involved are for personal injury (i.e., public liability) and for property damage; that if the Exchange policy fails to provide such protection, then Dart breached its obligation under the lease agreement.

The lease agreement provided in part that the lessee, Dart, "shall carry and keep in force at Lessee's expense insurance on the vehicle(s) in insurance companies approved by the Lessor against loss or damage by fire, theft, public liability, property damage, and collision ($500 deductible) in an amount equal to the full insurable value thereof, with loss, if any, payable to the Lessor and/or its assigns as its interest may appear, it being agreed that the Lessor may carry such insurance, if the Lessee fails so to do, and may add to the rental hereunder the cost of the same, which the Lessee hereby agrees to pay on the next ensuing rental installment date." This sentence of the lease agreement directly precedes the indemnification clause hereinbefore mentioned.

The trial court found that Dart "carried and kept in force such insurance as they were required to carry and keep in force under the provisions of the Lease Agreement and that they did not breach any provisions of the Lease Agreement in respect to furnishing insurance for Mack Trucks, Inc."

The lease was prepared by Mack. There was uncontroverted evidence

that the only liability coverage sought by Mack from Dart was owner's liability arising out of the negligence of Dart (its employees) in the use of the leased vehicles. Dart furnished such insurance to Mack by having Mack named as an additional insured under the Exchange policy, and Mack accepted this coverage. Nothing in the agreement indicates that the parties intended that Dart should assume the obligation of insuring against the losses named in the agreement where such losses would be caused by a defect in the manufacture of the vehicles, as was the case here. We are of the opinion that the court's finding that Dart did not breach the provisions of the lease agreement concerning its obligation to furnish insurance to Mack is supported by the evidence.

In view of the conclusions herein reached, we deem it unnecessary to comment on the other questions raised by appellants bearing on whether the Exchange policy provides pro rata or excess coverage to the Zurich policy.

The judgment is affirmed.

Stephens, Acting P. J., and Aiso, J., concurred.

A petition for a rehearing was denied August 20, 1970, and the opinion was modified to read as printed above. The petition of all the appellants for a hearing by the Supreme Court was denied September 24, 1970.