[Civ. No. 1702. Fifth Dist. Feb. 27, 1974.]

CHARLES D. WARNER & SONS, INC., Plaintiff and Respondent, v.
SEILON, INC., Defendant, Cross-defendant and Appellant;
FIRESTONE TIRE & RUBBER COMPANY, Defendant, Cross-complainant and Appellant.

## COUNSEL

Price, Martin & Crabtree and John W. Martin for Defendant, Cross-defendant and Appellant.

Cardozo, Trimbur & Nickerson and Paul L. Martelli for Defendant, Cross-complainant and Appellant.

Stockton & Schrimp and Cleveland Stockton for Plaintiff and Respondent.

**FRANSON, J.—**

## PROPERTY DAMAGE APPEAL

Plaintiff is a corporation engaged in the rock, sand and gravel business. On April 25, 1966, a 1956 International truck owned by it was totally destroyed after a blowout of the right front tire. The tire that failed was a Seiberling truck tire which plaintiff had purchased on August 16, 1965, from Bill Watson who did business as Bill's Tire Service in Modesto. At the time of the sale, Watson was a franchised tire dealer for the Seiberling Tire & Rubber Company, a division of The Firestone Tire & Rubber Company.[1]

Charles Warner, the plaintiff's vice-president, testified that at the time the tire was purchased from Watson he received a verbal guaranty against any defects in manufacture. Watson testified that he gave plaintiff "the standard manufacturer's guaranty against defects in workmanship and materials for the life of the tread." Watson indicated that this type of guaranty is common in the tire industry.

The jury apparently found that the tire blowout was due to a cord separation caused by a faulty ply bonding process in the manufacture of the tire.

At trial plaintiff produced an expert witness who testified that the value of the truck was $4,500 and that it would have taken 90 days to get a replacement. Warner testified that the plaintiff's profit on the use of the truck was over $100 per day. Defendants produced an expert witness who valued the truck at $3,000, less the cost of reconditioning.

The jury impliedly found that both Seilon, Inc. and Firestone had breached the express warranty given by Watson and awarded damages of $12,300.[2] The award was computed as follows: the sum of $4,500 for the truck and $100 per day for 90 days for loss of use of the truck, less $100

---

[1]Prior to February 1, 1965, Watson had been a franchised tire dealer for Seiberling Rubber Company, a corporation, the predecessor of Seilon, Inc. On February 1, 1965, Firestone acquired the tire manufacturing facilities and assets of the Tire Division of Seiberling Rubber Company and also took over Seiberling's franchised dealers in order to continue marketing Seiberling tires as a division of Firestone.

[2]It is unclear as to the theory upon which the jury found that Seilon, Inc. breached the express warranty. At the time of the sale, Watson was a franchised dealer of Firestone. However, the evidence showed that Watson previously had made several sales of tires to plaintiff when he was a franchised dealer for Seiberling and that he gave the standard manufacturer warranties as authorized by Seiberling. Perhaps the jury imposed liability against Seilon on the theory of *apparent* agency; in any event, Seilon does not challenge the jury's finding of liability.

per day for each of the 12 nonworking days included in the 90-day replacement period.

Following the jury trial the trial court entered a judgment by default against Watson in the sum of $5,750. In arriving at the amount of the judgment against Watson, the trial court compromised on the value of the truck as testified to by the opposing experts and found $3,750 for its value. It determined the value of the loss of the use of the truck to be $2,000, based on a 20-day replacement period at $100 per day.

On November 12, 1970, Seilon and Firestone moved for a new trial on the grounds of excessive damages and insufficiency of the evidence to justify the verdict. (Code Civ. Proc., § 657, subds. 5 and 6.) The motion was denied. On this appeal we are asked to review the propriety of the order denying the new trial. (Code Civ. Proc., § 906.)

■ We note initially that a motion for new trial predicated on the grounds of the insufficiency of the evidence and excessive damages is addressed to the sound discretion of the trial judge; his action in refusing a new trial will not be disturbed on appeal unless it is affirmatively shown that he abused his discretion. (*Windeler* v. *Scheers Jewelers*, 8 Cal.App.3d 844, 852-854 [88 Cal.Rptr. 39].) Also, to argue that the damages awarded by a jury are excessive is merely another way of saying that the evidence does not justify the amount of the award. (*Stevens* v. *Parke, Davis & Co.*, 9 Cal.3d 51, 61 [107 Cal.Rptr. 45, 507 P.2d 653].) For this reason, the same test applies in determining whether a new trial should be granted, either on the ground of excessive damages, or on the ground of the insufficiency of the evidence.

■ Seilon and Firestone assert that the trial court's award of damages in the amount of $5,750 against the defaulting defendant Watson shows as a matter of law that the award of $12,300 against them is excessive. We hold to the contrary.

Code of Civil Procedure section 657 provides in pertinent part: "A new trial shall not be granted upon the ground of insufficiency of the evidence to justify the verdict or other decision, nor upon the ground of excessive or inadequate damages, unless after weighing the evidence the court is convinced from the entire record, including reasonable inferences therefrom, that the court or jury *clearly* should have reached a different verdict or decision." [Italics added.]

The trial judge in his memorandum of decision on the motion for new trial stated: "The court has reweighed the evidence, the reasonable inferences therefrom, and the credibility of the witnesses, and concludes that,

although it would and did fix damages in a considerably lesser amount, it is not clear that the jury should have reached a different verdict; . . . Reasonable minds might differ with respect to the weight to be given to the testimony of the witnesses and the opinions expressed."

From this statement we see that the trial judge satisfied the duty imposed on him in ruling on the motion. He weighed the evidence and exercised his independent judgment as to whether the verdict was in error or against the fair preponderance of the evidence. (*Perry* v. *Fowler,* 102 Cal.App.2d 808, 811 [229 P.2d 46]; 5 Witkin, Cal. Procedure (2d ed. 1971) Attack on Judgment in Trial Court, § 35, p. 3611.)

■ However, in reviewing the trial court's exercise of discretion, unlike the lower court, we do not weigh the evidence; our power *begins* and *ends* with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. (*Crawford* v. *Southern Pacific Co.,* 3 Cal.2d 427, 429 [45 P.2d 183]; *Windeler* v. *Scheers Jewelers, supra,* 8 Cal.App.3d 844, 852.)

■ There is clear evidence to support the jury's implied finding that the value of the truck was $4,500; that it would have taken 90 days to get a replacement and that plaintiff's profit on the use of the truck was over $100 per day. The fact that the trial judge earlier had entered a default judgment against Watson in an amount considerably less than the jury verdict is not determinative. We can only speculate as to why the judge found a loss of use of only 20 days or why he compromised on the value of the truck. In any event, irrespective of the reasons for the amount of the default judgment, it is not controlling in our review of the order denying the motion for a new trial. The verdict of $12,300 must stand.

### INDEMNITY APPEAL

On December 7, 1964, a written agreement was entered into between Seiberling Rubber Company, as seller, and Firestone, as buyer. By its terms, Firestone agreed to purchase Seiberling's tire manufacturing plant and assets at Barberton, Ohio, including an inventory of tires at the Barberton plant and in various regional sales branches and warehousing facilities and on consignment or otherwise to dealers in the channels of distribution. The assets sold are described as the "Tire Division" of Seiberling.

It was agreed that the sale and delivery to Firestone of the assets of the Tire Division would take place at the "closing date" which was fixed at the close of business on January 31, 1965.[3]

---

[3]In the agreement of December 7, 1964, it is provided that during the period January 1, 1965 to January 31, 1965, the business of the Tire Division would be con-

Under paragraph 11 of the agreement, it is provided: "The seller will further indemnify the buyer and hold it harmless against *all liability* to others,

(i) in respect of *all warranties,* guaranties and indemnities (including patent indemnities) given in respect of products of the Tire Division manufactured prior to the closing date, . . .

(ii) *arising out of, connected with or resulting from the operation of the Tire Division prior to the Closing Date,* or *the sale,* use or ownership of *any product* of the Tire Division manufactured prior to the closing date, . . ." (Italics added.)

On February 17, 1965, a bill of sale was executed transferring the assets of the Tire Division of Seiberling to Firestone, effective February 1, 1965. The bill of sale contains similar indemnification provisions.

It is undisputed that the tire in question was manufactured by Seiberling prior to the closing date. The Seiberling tires purchased by Firestone were thereafter marketed by Firestone through its franchised dealers. Watson, who was formerly a franchised dealer for Seiberling, after February 1, 1965, became a franchised dealer for the Seiberling Tire Division of Firestone.

Plaintiff proceeded in its action before the jury upon two theories of liability, namely, strict liability in tort for placing a defective product on the market and breach of express warranty. The jury was instructed that only if it found a breach of express warranty could it award plaintiff compensation for being deprived of the use of its truck.[4] Because the jury verdict exceeded the highest opinion of any witness as to the value of the truck, all parties to this appeal agree that the jury necessarily found both defendants liable for breach of the express warranty given by Watson.

██ The trial court concluded that the indemnity language contained in paragraph 11 "does not mean that [Seiberling] is obligated to indemnify Firestone for express warranties which Firestone might choose to make simply because the tire involved was manufactured by . . . [Seiberling]." It found that the parties intended that Seiberling would indemnify Firestone only for liability arising out of warranties which *Seiberling* had made or

---

ducted "for the account of" Firestone and that, upon closing, the sale would be deemed effective on January 1, 1965. However, as hereafter noted, the bill of sale executed on February 17, 1965, provides for the transfer of the assets of the Tire Division to Firestone as of February 1, 1965.

[4] In *Seely* v. *White Motor Co.,* 63 Cal.2d 9, 18-19 [45 Cal.Rptr. 17, 403 P.2d 145], it is held that economic losses such as the loss of the use of a truck, are not recoverable under a theory of strict liability. (See also *Anthony* v. *Kelsey-Hayes Co.,* 25 Cal. App.3d 442, 447 [102 Cal.Rptr. 113].)

would make in connection with the sale of its tires prior to the closing date. We believe that the trial court's finding in this regard is contrary to the expressed intention of the parties and must be reversed.

■ Inasmuch as neither party presented extrinsic evidence bearing on the interpretation of the indemnity provision, its interpretation is solely a question of law. For this reason we are not bound by the trial court's interpretation, and we can make an independent examination of the agreement and reach our own conclusion as to the reasonable meaning of the indemnification clause. (See *Gribaldo, Jacobs, Jones & Associates* v. *Agrippina Versicherunges A.G.,* 3 Cal.3d 434, 445-446 [91 Cal.Rptr. 6, 476 P.2d 406]; *Parsons* v. *Bristol Development Co.,* 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767, 402 P.2d 839].) ■ An indemnity agreement like other contracts must be interpreted so as to give effect to the mutual intention of the parties as it existed at the time of contracting so far as it is ascertainable and lawful. (See *United Air Lines* v. *Western Air Lines,* 132 Cal.App.2d 308, 315 [282 P.2d 118]; see also *Gribaldo, Jacobs, Jones & Associates* v. *Agrippina Versicherunges A.G., supra,* at p. 442; *J. A. Payton* v. *Kuhn-Murphy, Inc.,* 253 Cal.App.2d 278, 281 [61 Cal.Rptr. 575].)

■ We note that the indemnification clause has two aspects: subparagraph (i) indemnifies and holds Firestone harmless against "all liability" to others in respect of "all warranties" given as to products of the Tire Division manufactured prior to the closing date,[5] and subparagraph (ii) indemnifies and holds Firestone harmless against "all liability . . . arising out of, connected with or resulting from the operation of the Tire Division" or "the sale" of any products of the Tire Division manufactured prior to the closing date. Manifestly, the broad language of each paragraph was intended to protect Firestone from liability thereafter arising from the activities of the Tire Division over which it had no control.

Even if subparagraph (i) had been omitted from the agreement, Firestone's liability reasonably would come within the intendment of subparagraph (ii) as a liability "arising out of" the operation of the Tire Division prior to the close of sale. While technically Firestone's liability is based on a breach of warranty given by it after the sale, we believe that in ascertaining the intent of the parties as to the liabilities to be covered by the indemnifica-

---

[5]While the first clause is uncertain in the sense that it does not specifically state that it is to cover warranties thereafter made by Firestone, it likewise does not expressly restrict indemnification to warranties made by Seiberling. In the absence of such a restriction, the language "all liability" in respect of "all warranties" when considered in the light of the comprehensive language of the second clause, reasonably implies that warranties by Firestone were within the contemplation of the parties at the time of contracting.

tion clause, we should look behind the warranty and its breach to the underlying cause of the breach, which was the defect in the tire manufactured by Seiberling. Under this analysis it becomes apparent that Firestone's liability comes within the scope of the indemnity provision.

A manufacturer's warranty against defects is essential to the marketing of tires. Seiberling clearly understood that Firestone would have to give a manufacturer's warranty in order to sell the tire in question. The warranty given was restricted to defects in manufacture over which Firestone had no control or responsibility. We say this because we find no evidence in the record which would support a finding that Firestone or Watson failed to inspect the tire for defects prior to installing it on plaintiff's truck and that a reasonable inspection would have disclosed the defect.

Nor can it logically be argued that Firestone's breach of warranty is comparable to negligent conduct on its part. Firestone relied on Sieberling's implied warranties of merchantability and fitness for intended use in making the representations to the plaintiff concerning the tire.[6] This reliance by Firestone must be deemed reasonable in the absence of evidence that it was negligent in the handling of the tire.

Because there is no evidence of negligence on the part of Firestone, the rule that in order to provide by written agreement for indemnification from a party's own negligence the agreement must be clear and explicit and must be strictly construed against the indemnitee, is inapplicable. (See *Goldman v. Ecco-Phoenix Elec. Corp.*, 62 Cal.2d 40, 44 [41 Cal.Rptr. 73, 396 P.2d 377]; *Vinnell Co.* v. *Pacific Elec. Ry. Co.*, 52 Cal.2d 411, 416 [340 P.2d 604]; *Price* v. *Shell Oil Co.*, 2 Cal.3d 245, 256-257 [85 Cal.Rptr. 178, 466 P.2d 722].)

In *Dart Transportation Service* v. *Mack Trucks, Inc.*, 9 Cal.App.3d 837, 848 [88 Cal.Rptr. 670], the reviewing court purports to equate a breach of manufacturer's warranty with negligence in construing a written indemnity provision. However, we believe the holding in *Dart* is limited to its particular facts. In that case, an employee of a trucking firm was involved in an accident while driving a tractor leased to his employer by the manufacturer. The accident was caused by a defective steering apparatus. At trial, the lessor-manufacturer was found liable both to its lessee and the lessee's employee on theories of strict liability and breach of a "manufacturer's standard vehicle warranty" included in the lease agreement. The lease also contained a general indemnification provision that "the lessee shall indem-

---

[6](See Cal. U. Com. Code, §§ 2314, 2315; see also Ohio R.C. §§ 1302.27 and 1302.38 by reason of the fact that the contract provides that it is to be governed by the laws of Ohio.)

nify and hold the lessor harmless from and against any and all claims for personal injury or property damage arising out of the use or operation of the vehicles." The judgments were paid by the lessor's insurer, and the insurer then sought indemnification from the lessee's carrier for the full amount of the judgment. In upholding the trial court's denial of indemnification, the court stated: "While an action based upon a manufacturer's strict liability or breach of warranty liability does not sound in negligence, we believe, upon a parity of reasoning, that the rule of construction applicable to an agreement where one seeks indemnification from his own negligence is equally applicable here. (*Goldman* v. *Ecco-Phoenix Elec. Corp., supra,* 62 Cal.2d 40, 41.)"[7]

We observe that in *Dart* the manufacturer who was responsible for the defect in the steering apparatus was seeking to shift the ultimate liability for the accident to its lessee who was in no way responsible for the defect. Under these circumstances, the court justifiably equated the breach of warranty and the strict liability with negligence in construing the agreement against the indemnitee. As the court noted, it was never intended that the lessee, who was a consumer of the truck and within the class to be protected, should have to indemnify the lessor for damages resulting from the lessor's own acts. Stated another way, the indemnity provision in *Dart* implies only that the lessee was to indemnify the lessor as to any third party claim arising out of the *lessee's* negligence in operating the truck. It would have been a perversion of the agreement to hold that the lessee should indemnify the lessor for the latter's wrongdoing.

The case at bench is clearly distinguishable. Here, the inclusion of Firestone's liability within the scope of the indemnification clause will place the ultimate responsibility where it belongs—on Seiberling, whose conduct caused the accident. We believe that such a result was intended by the parties when they drafted the indemnification clause.

The judgment in favor of plaintiff and against Seilon, Inc. and The Firestone Tire & Rubber Company in the sum of $12,300 is affirmed.

---

[7]In *Goldman* v. *Ecco-Phoenix Elec. Corp., supra,* 62 Cal.2d 40 at page 44, the restrictive rule of construction against the indemnitee is explained as follows: "Although the cases have held that one may provide by agreement for indemnification against his own negligence [citations], the agreement for indemnification must be clear and explicit; the agreement must be strictly construed against the indemnitee. In view of the general rule that an implied indemnity does not reach to protect the indemnitee from a loss to which his negligence has contributed, we must look at least for an express undertaking in the document that he is to do so. If one intends to do more than merely incorporate the general rule into the written document, he will be required to fix the greater obligation in specific terms. *And the extent of the purported indemnitor's liability must be determined from an objective assessment of the language of the instrument.*" [Italics added.]

The judgment in favor of Seilon, Inc., on the cross-complaint is reversed. The matter is remanded to the trial court with directions to enter judgment for Firestone on its cross-complaint for indemnity against Seilon, Inc., and for costs of suit and costs on appeal on the cross-complaint.

Brown (G. A.), P. J., and Thompson, J.,\* concurred.

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.