[No. A105392. First Dist., Div. Two. Nov. 14, 2005.]

McCRARY CONSTRUCTION COMPANY, Cross-complainant and Respondent, v.
METAL DECK SPECIALISTS, INC., Cross-defendant and Appellant.
McCRARY CONSTRUCTION COMPANY, Cross-complainant and Appellant, v.
HORIZON SHEET METAL, INC., Cross-defendant and Respondent.

1530

COUNSEL

Curotto Law Offices and Robert F. Curotto for Cross-complainant and Appellant and for Cross-complainant and Respondent.

Nielsen, Haley & Abbott, James C. Nielsen and Jennifer S. Cohn for Cross-defendant and Appellant.

Law Offices, William J. Diffenderfer and William S. Ginsburg for Cross-defendant and Respondent.

OPINION

KLINE, P. J.—

## I.

## Introduction

Metal Deck Specialists, Inc. (Metal Deck) appeals from a judgment requiring it to indemnify McCrary Construction Company (McCrary) for a judgment paid by McCrary after a jury trial in a wrongful death action arising from a construction site accident. Metal Deck contends the trial court erred in ordering full indemnity rather than indemnity based on the proportion of fault the jury attributed to Metal Deck. McCrary cross-appeals against Horizon Sheet Metal, Inc. (Horizon), which the trial court found did not owe McCrary indemnity. We reverse the judgment against Metal Deck, and affirm as to Horizon.

## II.

## Statement of the Case and Facts

Frederick Kimbark died after falling through a hole in a metal roof at a construction site where he was working as a carpenter. McCrary was the general contractor on the project; Metal Deck was a subcontractor, responsible for furnishing and installing the metal deck system on the roof; Horizon was another subcontractor, responsible for installing heating, ventilation and air conditioning units and performing miscellaneous sheet metal work. Metal Deck's employees cut the hole through which Kimbark subsequently fell, but left the work site without covering it. A Horizon employee, Plummer, covered the hole in question at the request of McCrary's superintendent, Mark

Nelson, but did not secure the covering. Kimbark fell through the hole when he lifted the plywood covering it and stepped forward, not realizing the plywood had been covering a hole. Among many disputed issues at trial were whether Metal Deck had a duty to cover the holes it cut or properly left that task to McCrary, and whether McCrary agreed to assume responsibility for covering the holes or was forced to do so by Metal Deck's refusal.

At the wrongful death trial, the jury concluded that Metal Deck, McCrary, Horizon and Kimbark himself were all negligent with respect to the accident. The jury apportioned fault 45 percent to McCrary, 30 percent to Metal Deck, and 25 percent to Kimbark. It found that Horizon's negligence did not cause Kimbark injury. McCrary satisfied its portion of the judgment with a payment of $535,194, which it described as representing its stated percentage of responsibility under the jury's verdict plus costs and interest. Metal Deck appealed the judgment.

In *Kimbark v. McCrary*, A097402, filed November 20, 2003, this court affirmed the $1,171,800 judgment, rejecting Metal Deck's arguments that it owed no duty to Kimbark or properly discharged its duty. We noted that although Metal Deck's subcontract with McCrary did not expressly require it to cover the holes it cut in the roof, the contract did expressly require Metal Deck to comply with applicable safety laws, rules and regulations, one of which specifically required secured and marked covers for floor, roof and skylight openings. We also held that Metal Deck had a duty to cover the holes under *Rowland v. Christian* (1968) 69 Cal.2d 108, 112 [70 Cal.Rptr. 97, 443 P.2d 561], and that substantial evidence supported the jury's conclusion that Metal Deck did not properly discharge its duty. Metal Deck represents in this court that it has since satisfied the remainder of the wrongful death judgment, paying its 30 percent share plus interest.[1]

While Metal Deck's appeal in the wrongful death action was pending, the trial court heard McCrary's previously bifurcated cross-complaint for breach of contract and indemnity. McCrary's first amended cross-complaint sought full indemnity under causes of action for breach of contract and express contractual indemnity, and comparative equitable indemnity under a cause of action for implied and equitable indemnity. Metal Deck's answer raised affirmative defenses, asserting that it was not liable for any indemnity as well as that, under the doctrine of comparative indemnity, McCrary should be barred from recovery of damages directly attributable to its proportionate share of fault. Horizon raised affirmative defenses, asserting the cross-complaint was barred for reasons including McCrary's comparative fault and denying its own liability for any damages.

---

[1] Documentation of this satisfaction of judgment is not part of the record on appeal. Metal Deck states it will provide a copy upon request of the court or any party.

The indemnity provision in Metal Deck's and Horizon's subcontracts with McCrary provided: "Subcontractor agrees to defend and indemnify Contractor against, and save him harmless from, any and all claims, suits or liability for injuries to property, injuries to persons, including death, and from any other claims, suits or liability on account of, or related to, any act or omission, or alleged act or omission of the Subcontractor, or any of his officers, agents, employees or servants. Subcontractor shall be liable to Contractor for all expenses, including court costs and attorney's fee incurred by Contractor in connection with any such claims, suits or liability, and/or in connection with any claim by Contractor against Subcontractor arising out of the provisions of this article."

Metal Deck's trial brief argued that McCrary was not entitled to indemnity under theories of express or implied indemnity because McCrary was actively negligent with respect to the accident, Metal Deck was not negligent, and McCrary failed to perform its obligations under its contract with Metal Deck. Horizon's brief denied liability for indemnity on the basis that the jury had determined its conduct did not cause the underlying injury. McCrary's trial brief argued as to Metal Deck that language of the contract required full indemnity regardless of McCrary's own negligence and that Metal Deck was negligent. As to Horizon, McCrary argued that the language of the indemnity clause was broad enough to impose liability based on Horizon's negligence despite the jury's finding that Horizon's conduct was not a " 'substantial factor' in causing the fatal accident."

The matter was tried to the court on February 18, 2003, and the court's statement of decision was filed on March 14, 2003. The court concurred with the jury's allocation of fault as to Kimbark (25 percent), McCrary (45 percent) and Metal Deck (30 percent), as well as its finding that Horizon was negligent, but disagreed that Horizon's negligence was not a proximate cause of the accident. The court found that after Metal Deck refused to cover the holes it had cut on the deck, "Nelson obtained a commitment from Horizon to cover the holes." The court stated: "The record is quite clear that Horizon agreed to cover the holes in question and obviously failed to either secure or appropriately label same according to [Occupational Safety and Health Act (OSHA)] standards and general negligence standards. The record clearly establishes that the [decedent] raised an unsecured piece of plywood obviously unaware that there was a hole beneath as he stepped forward to his death. This Court concludes that Horizon's negligence clearly was a substantial factor in causing plaintiff's fatal injury." The court also found Metal Deck was negligent and its negligence was a substantial factor in causing Kimbark's death. It cited evidence that Metal Deck refused to cover the holes, forcing Nelson to find a third party on short notice to do so.

The court rejected the argument that because the indemnity clause in the subcontracts did not state what effect McCrary's negligence would have on Metal Deck's and Horizon's indemnity obligations, McCrary would not be entitled to indemnity if it was deemed actively negligent. With respect to Metal Deck, the court first found that the parties negotiated Metal Deck's obligation to cover the holes it cut, then found McCrary's conduct should not preclude indemnity because, quoting *Morton Thiokol, Inc. v. Metal Building Alteration Co.* (1987) 193 Cal.App.3d 1025, 1029 [238 Cal.Rptr. 722] (*Morton Thiokol*), "indemnity should be afforded under any circumstances where to do so furthers the manifest intent of the parties to the contract and where the loss sustained would not have occurred without the indemnitor's negligence."

The court reached a contrary result regarding Horizon's obligation to provide indemnity. Citing the rule of *Continental Heller Corp. v. Amtech Mechanical Services, Inc.* (1997) 53 Cal.App.4th 500 [61 Cal.Rptr.2d 668], that indemnity is required where the indemnitor was "in some way connected to a specific act or omission," the court found Horizon was connected to a "far greater degree" than the indemnitor in *Continental Heller.* The court found, however, that Horizon was not responsible for covering the holes because its subcontract contained no provisions regarding covering of the holes, there was no evidence of relevant discussions pertaining to the indemnification clause and, but for Plummer's "volunteering" to cover the holes, the jury could not have found Horizon negligent. Accordingly, the court believed the indemnity question turned on whether McCrary's negligence was active or passive. The court found McCrary's negligence was active because, as general contractor, it was responsible for supervision of the construction, it was aware of the hazard presented by the uncovered holes and "took control," albeit with "little choice," by directing Horizon's employee to cover the holes, it had an affirmative duty to inspect Horizon's "volunteer work" but failed to do so, and it failed to instruct Horizon on how to cover the holes.

Metal Deck filed objections to the statement of decision, including the objection that the statement of decision was ambiguous in failing to specify whether Metal Deck owed indemnity only in the amount of its own percentage of negligence liability or also to cover the percentage of fault attributed to McCrary. Metal Deck also asserted that an actively negligent indemnitee could obtain indemnity only for the portion of its liability attributable to the negligence of the indemnitor.

The court overruled Metal Deck's objections, holding that "it would be unreasonable to interpret the contract as failing to provide for full indemnity, given that (1) McCrary's only negligence was in failing to remedy a

dangerous condition created by the negligence of . . . Metal Deck, the indemnitor, and (2) Metal Deck's negligence involved the violation of an express term of the same contract containing the indemnity clause."

In its judgment filed on August 27, 2003, the court awarded McCrary judgment against Metal Deck in the amount of $688,832.78 and ordered judgment for Horizon.

## III.

### Discussion

#### A.

#### Standard of Review

Metal Deck argues that it owes no indemnity to McCrary under the parties' contract for several reasons. First, Metal Deck urges that the issue should be determined in accordance with principles of comparative negligence, under which McCrary would not be entitled to indemnity because it paid only its proportionate share of the wrongful death judgment. Second, Metal Deck contends that even under an all or nothing approach to indemnity, McCrary is not entitled to indemnity because it was actively negligent with respect to the accident. Lastly, Metal Deck argues that if it does owe McCrary indemnity, Horizon must as well because the two subcontractors' contracts with McCrary contained identical indemnity clauses.

Preliminarily, Metal Deck urges that this court must review the trial court's judgment de novo, as Metal Deck contests only the court's interpretation and application of the indemnity clause and does not challenge the factual findings on negligence. It is "solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence." (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) Where the facts are undisputed, we review the trial court's application of law independently. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960]; *Mole-Richardson Co. v. Franchise Tax Bd.* (1990) 220 Cal.App.3d 889, 894 [269 Cal.Rptr. 662].) However, "where extrinsic evidence has been properly admitted as an aid to the interpretation of a contract and the evidence conflicts, a reasonable construction of the agreement by the trial court which is supported by substantial evidence will be upheld." (*In re Marriage of Fonstein* (1976) 17 Cal.3d 738, 746–747 [131 Cal.Rptr. 873, 552 P.2d 1169].)

Here, the trial court's interpretation of the indemnity provision was based on its assessment of conflicting evidence regarding the parties' contract negotiations (such as whether the contract required Metal Deck to cover the holes it cut) and facts leading to the accident (such as whether McCrary voluntarily assumed responsibility for covering the holes or was forced to do so by Metal Deck's refusal). Thus, in construing the indemnity agreement, "to the extent the evidence is in conflict, we accept the trial court's implied credibility determinations; to the extent the evidence is not in conflict, we construe the instrument, and we resolve any conflicting inferences, ourselves. (*Parsons v. Bristol Development Co.*[, *supra*,] 62 Cal.2d [at pp.] 865–866 and 866, fn. 2.)" (*Schaefer's Ambulance Service v. County of San Bernardino* (1998) 68 Cal.App.4th 581, 586 [80 Cal.Rptr.2d 385].)

## B.

### McCrary Is Not Entitled to Be Indemnified by Metal Deck

█ "Indemnity may be defined as the obligation resting on one party to make good a loss or damage another party has incurred. (*Sammer v. Ball* (1970) 12 Cal.App.3d 607, 610 [91 Cal.Rptr. 121].) This obligation may be expressly provided for by contract (e.g., *Markley v. Beagle* (1967) 66 Cal.2d 951, 961 [59 Cal.Rptr. 809, 429 P.2d 129]), it may be implied from a contract not specifically mentioning indemnity (see *Cahill Bros., Inc. v. Clementina Co.* (1962) 208 Cal.App.2d 367, 375–379 [25 Cal.Rptr. 301]), or it may arise from the equities of particular circumstances (*S.F. Examiner Division v. Sweat* (1967) 248 Cal.App.2d 493, 497 [56 Cal.Rptr. 711]; see Note, *Contribution and Indemnity in California* (1969) 57 Cal. L.Rev. 490, 492–493). Where, as here, the parties have expressly contracted with respect to the duty to indemnify, the extent of that duty must be determined from the contract and not by reliance on the independent doctrine of equitable indemnity. (*Markley v. Beagle, supra*, at p. 961.)" (*Rossmoor Sanitation, Inc. v. Pylon, Inc.* (1975) 13 Cal.3d 622, 628 [119 Cal.Rptr. 449, 532 P.2d 97] (*Rossmoor*).)

Some California cases have interpreted express indemnity provisions by reference to a classification system described in *MacDonald & Kruse, Inc. v. San Jose Steel Co.* (1972) 29 Cal.App.3d 413 [105 Cal.Rptr. 725] (*MacDonald & Kruse*). According to *MacDonald & Kruse*, the first type of indemnity provision (type I) "provides 'expressly and unequivocally' that the indemnitor is to indemnify the indemnitee for, among other things, the negligence of the indemnitee," and the indemnitee is indemnified whether its liability arises from its sole or concurrent negligence. (*Id.* at p. 419.) Under the second type of indemnity clause, the indemnitee would be indemnified for his or her own *passive* negligence but not for *active* negligence. *MacDonald*

*& Kruse* described the "type II" indemnity clause by examples: A clause providing for indemnity for the indemnitee's liability " 'howsoever same may be caused' (*Vinnell Co. v. Pacific Elec. Ry. Co.* [(1959) 52 Cal.2d 411 [340 P.2d 604]]) or 'regardless of responsibility for negligence' (*Goldman v. Ecco-Phoenix Elec. Corp.* [(1964)] 62 Cal.2d 40 [41 Cal.Rptr. 73, 396 P.2d 377]), or 'arising from the use of the premises, facilities or services of [the indemnitee]' (*Harvey Machine Co. v. Hatzel & Buehler, Inc.* [(1960)] 54 Cal.2d 445 [6 Cal.Rptr. 284, 353 P.2d 924]), or 'which might arise in connection with the agreed work' (*Markley v. Beagle, supra*[, 66 Cal.2d 951]), or ' "caused by or happening in connection with the equipment or the condition, maintenance, possession, operation or use thereof" ' (*Price v. Shell Oil Co.* [(1970)] 2 Cal.3d 245 [85 Cal.Rptr. 178, 466 P.2d 722]), or 'from any and all claims for damages to any person or property by reason of the use of said leased property' (*Morgan v. Stubblefield* [(1972)] 6 Cal.3d 606 [100 Cal.Rptr. 1, 493 P.2d 465])." (*MacDonald & Kruse,* at p. 419.) The third type of indemnity clause "is that which provides that the indemnitor is to indemnify the indemnitee for the indemnitee's liabilities caused by the indemnitor, but which does not provide that the indemnitor is to indemnify the indemnitee for the indemnitee's liabilities that were caused by other than the indemnitor. Under this type of provision, any negligence on the part of the indemnitee, either active or passive, will bar indemnification against the indemnitor irrespective of whether the indemnitor may also have been a cause of the indemnitee's liability." (*MacDonald & Kruse,* at p. 420.)

Under the *MacDonald & Kruse* rules, McCrary would not be entitled to indemnity at all because the indemnity provision in its subcontract with Metal Deck is of the third category described in that case, calling for indemnity for liabilities "on account of, or related to, any act or omission . . . *of the Subcontractor.*" (Italics added.) (See *MacDonald & Kruse, supra,* 29 Cal.App.3d at pp. 417, 421 [promise to hold indemnitee harmless "from any . . . liability . . . in any way caused by [indemnitor]" viewed as "type III" clause]; *Hernandez v. Badger Construction Equipment Co.* (1994) 28 Cal.App.4th 1791, 1818–1819 [34 Cal.Rptr.2d 732] [same].)

■ In *Rossmoor,* our Supreme Court described the governing law as follows: "If an indemnity clause does not address itself to the issue of an indemnitee's negligence, it is referred to as a 'general' indemnity clause. (See *Markley v. Beagle, supra,* [66 Cal.2d] at p. 962; *Morgan v. Stubblefield*[, *supra,*] 6 Cal.3d [at p.] 624.) While such clauses may be construed to provide indemnity for a loss resulting in part from an indemnitee's *passive* negligence, they will not be interpreted to provide indemnity if an indemnitee has been *actively* negligent. (*Markley v. Beagle, supra,* at p. 962; *Morgan v. Stubblefield, supra,* at p. 624; see also *Burlingame Motor Co. v. Peninsula Activities, Inc.* (1971) 15 Cal.App.3d 656, 661 [93 Cal.Rptr. 376].) [¶] Provisions purporting to hold an owner harmless 'in any suit at law'

(*Markley v. Beagle, supra,* at p. 961), 'from all claims for damages to persons' (*Morgan v. Stubblefield, supra,* at p. 626), and 'from any cause whatsoever' (*MacDonald & Kruse*[, *supra,*] 29 Cal.App.3d [at pp.] 422–423), without expressly mentioning an indemnitee's negligence, have been deemed to be 'general' clauses." (*Rossmoor, supra,* 13 Cal.3d at pp. 628–629.)

*Rossmoor* explained, however, that the analysis of an indemnity clause was a matter of contract interpretation and the "active-passive dichotomy" was not "wholly dispositive." (*Rossmoor, supra,* 13 Cal.3d at p. 632.) "[W]hile adhering to the underlying distinction between active and passive negligence which has long been accepted by the bench, the bar, and the insurance industry, we hold that . . . the question whether an indemnity agreement covers a given case turns primarily on contractual interpretation, and it is the intent of the parties as expressed in the agreement that should control. When the parties knowingly bargain for the protection at issue, the protection should be afforded. This requires an inquiry into the circumstances of the damage or injury and the language of the contract; of necessity, each case will turn on its own facts." (*Rossmoor,* at p. 633.)

Although *Rossmoor* cited *MacDonald & Kruse* as providing an example of a "general" indemnity clause and of active negligence (*Rossmoor, supra,* 13 Cal.3d at pp. 628–630), it did not discuss or approve the three type-classifications set forth in *MacDonald & Kruse*. Rather, *Rossmoor* discussed "general" indemnity clauses, which, as indicated above, do not address the issue of an indemnitee's negligence, and clauses which explicitly provide indemnification against an indemnitee's own negligence. *Rossmoor*'s examples of general indemnity clauses included provisions that *MacDonald & Kruse* classified as type II (e.g., *Markley v. Beagle, supra,* 66 Cal.2d 951; *Morgan v. Stubblefield, supra,* 6 Cal.3d 606) and as type III (*MacDonald & Kruse, supra,* 29 Cal.App.3d at pp. 420–421). *Rossmoor* appears to have applied the same "general" indemnity limitation to what had formally been classified as type II and type III indemnity agreements.

█ Thus, following *Rossmoor*, an indemnity provision that does not refer to the issue of the indemnitee's negligence will be considered to be a general indemnity clause under which the indemnitee is not entitled to indemnity for its active negligence, unless the circumstances of the case and language of the contract evince a different intent by the parties. While *Rossmoor* emphasized that the passive/active distinction was not dispositive, it specifically retained this distinction as a guide to interpretation. (*Rossmoor, supra,* 13 Cal.3d at p. 632–633.) As stated in *Maryland Casualty Co. v. Bailey & Sons, Inc.* (1995) 35 Cal.App.4th 856, 869 [41 Cal.Rptr.2d 519], *Rossmoor* "recognized the general rule that an actively negligent tortfeasor cannot recover under a general indemnity provision . . . that is silent on the issue of the indemnitee's

negligence," but "made clear . . . that the general rule may not always apply and is merely a tool to be used to ascertain the intent of the parties."[2]

In the present case, the trial court concluded that McCrary was entitled to indemnity from Metal Deck, despite being actively negligent with respect to the accident, on the basis of *Morton Thiokol, supra,* 193 Cal.App.3d 1025. *Morton Thiokol* followed *Rossmoor's* "pragmatic approach," interpreting the parties' contract to permit an actively negligent indemnitee to recover under a general indemnity clause. (*Morton Thiokol,* at p. 1029.) The clause at issue specified that the contractor agreed " '*to indemnify and hold harmless the Owner and its agents and employees from any and all liability, loss, damage, cost and expense (including attorney's fees) sustained by reason of Contractor's breach of warranty, breach of contract, misrepresentation or false certification, or failure to exercise due care.*' " (*Id.* at p. 1027.) The underlying liability in *Morton Thiokol* resulted from the contractor's failure to use safety equipment which its contract required. A jury found the owner/indemnitee was actively negligent with respect to the accident. *Morton Thiokol* held that "indemnity should be afforded under any circumstances where to do so furthers the manifest intent of the parties to the contract and where the loss sustained would not have occurred without the indemnitor's negligence." (*Id.* at p. 1029.) "Where, as here, the agreement clearly indicates that one party was to be indemnified for any damages sustained as a result of another's breach of the contract, and it is undisputed that the accident would never have happened except for such breach, we conclude that the indemnity is viable notwithstanding the jury's finding of the indemnitee's 'active' negligence." (*Id.* at p. 1030.)

The factual situation in *Morton Thiokol* was very different from that presented here. In *Morton Thiokol,* the indemnitee Morton Thiokol, owner of a salt refinery, contracted with Metal Building Alteration Company (Metal Building) to install a new roof at the refinery. The contract providing for indemnity also required Metal Building to "*take all necessary precautions during the progress of the work to protect all persons and the property of others from injury or damage.*" (*Morton Thiokol, supra,* 193 Cal.App.3d at p. 1027.) The roof was "extremely steep" and safety precautions including

---

[2] At least one post-*Rossmoor* case expressly found the *MacDonald & Kruse* classifications "no longer tenable in light of *Rossmoor.*" (*Rodriguez v. McDonnell Douglas Corp.* (1978) 87 Cal.App.3d 626, 674 [151 Cal.Rptr. 399]; see also *Herman Christensen & Sons, Inc. v. Paris Plastering Co.* (1976) 61 Cal.App.3d 237, 247–248 [132 Cal.Rptr. 86] [questioning *MacDonald & Kruse* because interpretation of type III provision rendered indemnity agreement "illusory" and only two judges joined opinion setting forth classification]; *Marathon Steel Co. v. Tilley Steel, Inc.* (1977) 66 Cal.App.3d 413, 416–417, and fn. 4 [136 Cal.Rptr. 73] [noting "illusory" nature of *MacDonald & Kruse* interpretation of type III provision and fact that *Rossmoor* "ignored" this "restrictive interpretation"].)

safety lines, scaffolding and guard rails were "indispensable," and the presence of salt on the roof made it "impossible for a man to safely stand up." (*Ibid.*) Metal Building, aware of the need for safety equipment and the presence of salt on the roof, subcontracted the job to a third party but did not advise the subcontractor to take safety precautions. An employee of the subcontractor was injured when he fell from the roof, where he was working without safety equipment. (*Ibid.*)

Importantly, in *Morton Thiokol*, the indemnitee was found actively negligent, but its negligence only related to the creation of the underlying condition of the roof: salt residue which had built up on its surface. Morton Thiokol's negligence did not arise from any obligation under its contract with Metal Building. Instead, Metal Building assumed all obligation to take safety precautions in full awareness of the pre-existing dangerous condition of the roof, and safety equipment required by industry standards would have prevented the accident, but Metal Building failed to assure safety precautions were taken.

Thus, Morton Thiokol had nothing to do with the actual work being done on the roof and was not in a position to ensure the workers' safety. To the contrary, Morton Thiokol specifically contracted for Metal Building to take responsibility for ensuring safety on the work site. Since the contract provided for indemnity to Morton Thiokol for any liability resulting from Metal Building's breach of contract, the Court of Appeal found the parties clearly intended the indemnity obligation to arise in the situation presented, even though Morton Thiokol was actively negligent in other respects. In essence, the fact that the same contract requiring indemnity also required the indemnitor to assume full responsibility for precisely the hazard that resulted in liability led the *Morton Thiokol* court to depart from the usual rule that active negligence defeats indemnity under a general indemnity clause.

█ By contrast, in the present case both Metal Deck and McCrary were actively engaged in the construction work being performed and both had responsibility for safety on the site under their agreement—Metal Deck through its subcontract and McCrary by virtue of its role as general contractor. Metal Deck's failure to cover the holes it cut created the hazard which ultimately caused the accident, but, as stated in our prior opinion, all the experts at trial agreed that once McCrary's foreman assumed the obligation of covering the holes—whether voluntarily or by necessity—McCrary became responsible for doing so appropriately. McCrary's negligence in failing to ensure the holes were properly covered arose out of the jobsite responsibilities it assumed by virtue of its status as general contractor. The language of the indemnity clause did not purport to require indemnity from Metal Deck for this conduct by McCrary, and there is nothing otherwise to suggest that

the intent of the parties was to provide indemnity under these circumstances. Accordingly, we find no reason to depart from the general rule that an actively negligent indemnitee cannot recover under a general indemnity contract.

In light of this conclusion, we do not find it necessary to resolve Metal Deck's contention that a general indemnity clause should be interpreted as providing for at most comparative indemnity.[3] We note, however, that the practical effect of our decision to reverse the trial court's award of indemnity to McCrary will be consistent with comparative indemnity principles, as it will leave McCrary and Metal Deck each liable to the plaintiffs in the proportion the jury found each responsible for Kimbark's death.[4]

---

[3] Metal Deck's argument is that since equitable indemnity is now governed by comparative negligence principles (*American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578, 598 [146 Cal.Rptr. 182, 578 P.2d 899]), under the reasoning of *Goldman v. Ecco-Phoenix Elec. Corp., supra,* 62 Cal.2d 40, a contract that does not explicitly provide indemnity for an indemnitee's negligence now should be interpreted to require at most comparative indemnity. *Goldman,* decided at a time when equitable indemnity was an all or nothing proposition, held: "In view of the general rule that an implied indemnity does not reach to protect the indemnitee from a loss to which his negligence has contributed, we must look at least for an express undertaking in the document that he is to do so. If one intends to do more than merely incorporate the general rule into the written document, he will be required to fix the greater obligation in specific terms." (*Id.* at p. 44.)

We are not aware of any California case embracing such a view. Metal Deck offers *Hernandez v. Badger Construction Equipment Co., supra,* 28 Cal.App.4th 1791, as an example of a general indemnity clause interpreted on the basis of comparative fault to find the indemnitee entitled to indemnification only for amounts it paid that were attributable to the negligence of the indemnitor. (See also *St. Paul Mercury Ins. Co. v. Frontier Pacific Ins. Co.* (2003) 111 Cal.App.4th 1234, 1246 [4 Cal.Rptr.3d 416] [following *Hernandez*].) *Hernandez,* however, emphasized that it reached this result "based upon reasonable interpretation of the contract in light of its language, the circumstances of Employee's injury, and the parties' intent," although it observed that "the foundation of the holding in *MacDonald & Kruse, Inc.* appears substantially undercut by the subsequently evolving and presumably more equitable trend in statutory and case law toward allocating liability in proportion to comparative fault." (*Hernandez,* at pp. 1822–1823.)

In *Maryland Casualty Co. v. Bailey & Sons, Inc., supra,* 35 Cal.App.4th 856, the same court that decided *Hernandez* rejected an argument that after *Rossmoor, Morton Thiokol,* and *Hernandez,* a "type II" indemnification provision "*now* permits an actively negligent party to seek contractual indemnity on a comparative fault basis from the indemnitor." (*Maryland Casualty,* at pp. 868–869.) *Maryland Casualty* declined to "interpret those decisions so broadly." It found, as stated in the text above, that the cases recognized the general rule based on the passive/active distinction, but clarified that it was only a tool to guide interpretation and might not apply in every case. (*Id.* at p. 869.)

[4] In light of our conclusion that McCrary is not entitled to indemnity from Metal Deck, we have no need to reach Metal Deck's contention that Horizon should share in any indemnity obligation owed by Metal Deck. We also dismiss as moot Metal Deck's request for judicial notice of correspondence between its attorney and Horizon's concerning Horizon's failure to file a brief in response to this contention.

## C.

### McCrary Is Not Entitled to Be Indemnified by Horizon

In a cross-appeal against Horizon, presented as "conditional," to be reached only if we reverse or modify the trial court's judgment against Metal Deck, McCrary argues that it is entitled to indemnity from Horizon. The indemnity clause in Horizon's subcontract with McCrary, as noted above, is identical to that in Metal Deck's subcontract.

As discussed above, *Morton Thiokol, supra,* 193 Cal.App.3d 1025, permitted the actively negligent indemnitor to recover because the contract that created the obligation to indemnify in case of breach of contract specifically imposed upon the indemnitor responsibility for the safety precautions that could have prevented the accident, and the indemnitee's fault arose independently from the parties' contractual obligations. Here, Horizon was performing work outside the scope of its subcontract at the request of McCrary. We find no reflection in the contractual language that the parties intended Horizon to indemnify McCrary for McCrary's own negligence in failing to properly instruct or supervise Horizon on a job not within Horizon's contractual duties.

McCrary relies upon *John E. Branagh & Sons v. Witcosky* (1966) 242 Cal.App.2d 835 [51 Cal.Rptr. 844], in contesting Horizon's assertion that indemnity should not be required in the present case for reasons of public policy. McCrary notes that *Branagh* permitted an actively negligent indemnitee contractor to recover indemnity from its actively negligent indemnitor subcontractor. *Branagh* was concerned solely with the public policy argument; the appellant in that case did not argue that the indemnitor's active negligence should preclude indemnity. This is perhaps explained by the language of the indemnity clause at issue in *Branagh*, which, despite McCrary's claim of similarity to that in the present case, is actually quite different. The indemnity clause in *Branagh* provided: " 'Subcontractor further agrees: . . . To fully indemnify and save harmless the Contractor and Owner against any and all loss, damage, liability, claim, demand, suit or cause of action resulting from injury or harm to any person or property arising out of or in any way connected with the performance of work under this subcontract, *excepting only such injury or harm as may be caused solely and exclusively by the fault or negligence of Contractor.*' " (*Id.* at p. 836, fn. 2, italics added.) Unlike the indemnity provision in the present case, the one in *Branagh*, by excluding *only* sole negligence of the indemnitee, necessarily provided indemnity in a case of concurrent negligence. Accordingly, *Branagh* read the clause as specifically so providing and not as a general clause subject to the active/passive distinction. (*Id.* at p. 842.)

## IV.

### Disposition

The judgment against Metal Deck is reversed; the judgment in favor of Horizon is affirmed. Costs to Metal Deck and Horizon.

Haerle, J., and Ruvolo, J., concurred.