Filed 3/10/15  San Fernando Assocs. v. Taylor CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION SEVEN

| | |
|---|---|
| SAN FERNANDO ASSOCIATES, | B253053 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PC055113) |
| v. | |
| CRAIG V. TAYLOR et al., | |
| Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County, Randy Rhodes, Judge.  Affirmed.

Roger L. Stanard for Defendants and Appellants.

Law Offices of Daniel Friedlander and Daniel A. Friedlander for Plaintiff and Respondent.

_____

## INTRODUCTION

This is an appeal from the trial court's grant of right to attach orders and issuance of writs of attachment against guarantors of a commercial lease who claimed they had satisfied the condition for release of their personal guarantees. We affirm.

## FACTUAL AND PROCEDURAL SUMMARY

*The Lease, Addendum and Guaranty.*

In December 2006, San Fernando Associates, LLC leased one of two units in an industrial building located at 355 Parkside Drive in San Fernando to Container Components, Inc. San Fernando Associates and Container Components executed a five-year AIR Commercial Real Estate Association Standard Industrial/Commercial Single Tenant Lease Agreement along with a contemporaneous addendum relating to tenant improvements, annual rent adjustments and other matters; in addition, Craig Taylor and Darlene Taylor (Container Components' president and secretary) executed an AIR Commercial Real Estate Association Guaranty of Lease, acknowledging their financial interest in Container Components and further acknowledging San Fernando Associates would not execute the Lease if the Guarantors did not execute the Guaranty of Lease.[1] The guarantee was limited to six months' rent in effect at the time San Fernando Associates sought to enforce the guarantee.

The lease term commenced on January 16, 2007 and expired on January 15, 2012.[2] For the first year, Container Components was obligated to pay base rent in the amount of $13,693 per month under Section 1.5 of the lease, but the lease and Section 1.11(d) of the addendum provided for annual adjustments to the base rent. As of January

---

[1] According to their opening brief, Craig and Darlene Taylor are the sole owners of Container Components, a corporation engaged in the manufacture and sale of refuse container lids.

[2] Provided Container Components was not in default under any term or condition of the Lease, it had the option (as stated in the Addendum) to extend the term of the Lease for two additional five-year terms.

16, 2009, base rent had increased to $14,692 per month. In addition, under Section 11 of the lease and Section 1.11(e) of the Addendum, Container Components was also obligated to pay San Fernando Associates a pro rata share (52.5 percent) of "all utilities and services supplied to the Premises" and "all expenses including, but not limited to landscape maintenance, water service, real property taxes, property insurance premiums and other miscellaneous maintenance costs."[3] The Addendum also addressed payments due for various tenant improvements.

Pursuant to Paragraph 4.1 of the lease, "[r]ent" was defined to include "[a]ll monetary obligations of Lessee to Lessor under the terms of th[e] Lease (except for the Security Deposit)."

Paragraph 4.2 provides: "Payments will be applied first to accrued late charges and attorney's fees, second to accrued interest, then to Base Rent and Operating Expense Increase, and any remaining amount to any other outstanding charges or costs."

For any rent San Fernando Associates did not receive within five days after it was due, under Paragraph 13.4, Container Components agreed to pay a "late charge" in the amount of 10 percent of each overdue amount (or $100, whichever is greater). Under Paragraph 13.5—"in addition to the potential late charge provided for in Paragraph 13.4"—Container Components was obligated to pay interest at the rate of 10 percent from the date due on any monetary payment due other than late charges. Pursuant to Paragraph 21, the parties agreed: "Time is of the essence with respect to the performance of all obligations to be performed or observed by the Parties under this Lease."

---

[3] Regarding payment of real property taxes in particular, Paragraph 10.2 of the Lease stated: "In addition to Base Rent, Lessee shall pay to Lessor an amount equal to the Real Property Tax Installment due at least 20 days prior to the applicable delinquency date. If any such Installment shall cover any period of time prior to or after the expiration or termination of this Lease, Lessee's share of such Installment shall be prorated. . . ." Paragraph 8.3 addressed the Lessee's obligations with respect to property insurance.

Paragraph 22 ("No Prior or Other Agreements . . .") states: "This Lease contains all agreements between the Parties with respect to any matter mentioned herein, and no other prior or contemporaneous agreement or understanding shall be effective. . . ."

Regarding the security deposit, Paragraph 5 of the Lease states: "Lessee shall deposit with Lessor upon execution hereof the Security Deposit as security for Lessee's faithful performance of its obligations under this Lease.[4] If Lessee fails to pay Rent, or otherwise Defaults under this Lease, Lessor may use, apply or retain all or any portion of said Security Deposit for the payment of *any* amount due Lessor or to reimburse or compensate Lessor for any liability, expense, loss or damage which Lessor may suffer or incur by reason thereof. . . ." (Italics added.) In addition, "No part of the Security Deposit shall be considered to be held in trust, to bear interest or *to be prepayment for any monies to be paid by Lessee under this Lease*."

Paragraph 24 provides: "No waiver by Lessor of the Default or Breach of any term, covenant or condition hereof by Lessee, shall be deemed a waiver of any other term, covenant or condition hereof, or of any subsequent Default or Breach of the same or of any other term, covenant or condition hereof. Lessor's consent to, or approval of, any act shall not be deemed to render unnecessary the obtaining of Lessor's consent to, or approval of, any subsequent or similar act by Lessee, or be construed as the basis of an estoppel to enforce the provision or provisions of this Lease requiring such consent. The acceptance of Rent by Lessor shall not be a waiver of any Default or Breach by Lessee. Any payment by Lessee may be accepted by Lessor on account of moneys or damages due Lessor, notwithstanding any qualifying statements or conditions made by Lessee in connection therewith, which such statements and/or conditions shall be of no force or effect whatsoever unless specifically agreed to in writing by Lessor at or before the deposit of such payment.

---

4  The security deposit collected from Container Components at the inception of the lease was $13,693.

4

Paragraph 37.1 states: Each "Guarantor shall have the same obligations as Lessee under this Lease."

Both the Lease and Guaranty contained provisions for attorney fees.

*Late Payments.*

Beginning in December 2010 and continuing through August 2011, Container Components failed to pay its rent on time. As provided under the lease, during that time, San Fernando Associates assessed a late charge in the amount of 10 percent of each amount not received within five days of the due date for a total of $15,453.22.

*The Lease Extension and Second Addendum.*

In August 2011, Container Components asked San Fernando Associates for an extension of the lease term and rent relief, with Container Components allowed "to pay down any outstanding past-due rent over a [period] of months." On September 30, 2011, San Fernando Associates, Container Components and the Taylors (as guarantors) executed a Second Addendum, extending the lease term for an additional two years to January 15, 2014. Effective September 15, 2011 and continuing through January 15, 2013, monthly base rent was reduced to $12,500 on a "triple net basis" such that "total monthly rent" for that period was $12,836, after accounting for landscape maintenance, water service and "TI [tenant improvement] amortization" (pursuant to Paragraph 11 of the lease and Section 1.11(m) of the original Addendum). Under the Second Addendum, the last four months of TI amortization from the original lease ($493 per month) were waived for the period September 15, 2011 through January 15, 2012; landscape maintenance and water service costs were subject to adjustment from time to time to reflect actual cost.

As an additional modification, the parties agreed: "In addition to the monthly rent set forth above, you [Container Components] will pay $2,673.00 or more per month which shall be applied to the past due rent balance of $46,608.00. The latter shall be amortized without interest accruing. Upon the repayment of the past due rent amount, the Lessor [San Fernando Associates] agrees to release the two guarantors shown below

5

[Craig and Darlene Taylor] from their personal guarantees of this Lease." Also, beginning on July 15, 2012, Container Components had the right to terminate the lease by giving San Fernando Associates six months written notice and paying the rent specified for that six-month period on a monthly basis (plus pro-rated "triple net charges").

*Container Components' Election to Terminate the Lease.*

On June 8, 2012, Container Components notified San Fernando Associates of its intention to terminate the lease, effective July 1, 2012. Although the requested effective date was earlier than the date specified in the Second Addendum (July 15, 2012), San Fernando Associates accepted the notice as of July 1, 2012, and the parties agreed to a lease termination date of December 31, 2012.

On November 15, 2012, pursuant to Paragraph 7.4(c) of the lease, San Fernando Associates sent Container Components written notice identifying areas that needed repair or cleaning before surrender of the premises.

*The Complaint and Right to Attach Orders.*

On August 5, 2013, San Fernando Associates filed a complaint asserting a breach of lease cause of action against Container Components and a breach of lease guaranty claim against Craig Taylor and Darlene Taylor. San Fernando Associates alleged that beginning in December 2010 and continuing thereafter, Container Components had breached the lease by failing to pay amounts due under the lease and had also failed to surrender the premises in good repair and to remove its alterations and utility installations as agreed such that San Fernando Associates was entitled to damages exceeding $40,000 plus attorneys fees under the lease.

On August 30, San Fernando Associates filed applications for right to attach orders and orders for issuance of writs of attachment against Container Components, Craig Taylor and Darlene Taylor, indicating the amount to be secured by the attachment was $61,383.94, including estimated costs of $600 and estimated attorney fees in the amount of $3,500.

According to the supporting declaration of Douglas Wax, "Co-Managing Member" of San Fernando Associates, Container Components had breached its lease in a number of respects. The "balance of unpaid rent and other amounts due" under the lease as of September 16, 2011, was $29,002, as reflected in a schedule of "past due rent" for the period of September 1, 2011 through January 15, 2013 attached as an exhibit.[5] As Container Components failed to make timely rent payments for the months beginning in December 2010 and continuing through August 2011, San Fernando Associates had assessed late charges (calculated at 10 percent of each rent amount) in the amount of $15,453.22 as set forth in a separate summary of late charges through the end of September 2011 (also attached as an exhibit). Thereafter, Container Components failed to pay its pro rata share of property taxes and insurance premiums due between December 1, 2011 and December 1, 2012, totaling $39,463.38 (as reflected in letters, invoices and bills sent to Container Components).[6] After Container Components vacated

[5]     The "Past Due Rent" schedule (Exhibit 9 to Wax's Declaration) identifies the outstanding amount of past due rent at the end of September as $29,002. According to the "Summary of Late Charges" through September 2011 (Exhibit 5), San Fernando Associates separately calculated and Container Components separately owed an additional $15,453.22 (for a total of $44,455.22) at that time. San Fernando Associates does not explicitly state that these two sums were added together for purposes of determining the past due rent balance of $46,608 as stated in the Second Addendum or explain this apparent discrepancy ($2,152.78). In any event, the Taylors acknowledged the past due balance as of the end of September 2011 to be $46,608 in the Second Addendum.

[6]     More particularly, according to Wax's declaration and supporting documentation, the first installment of Container Components' pro rata share of 2011-2012 property taxes due on December 1, 2011 was $12,195.18; its pro rata share of 2012-2013 insurance premiums due on March 5, 2012, was $2,464.35; the second installment of Container Components' pro rata share of 2011-2012 property taxes due on June 1, 2012, was $12,195.18; and the first installment of its pro rata share of property taxes due on December 1, 2012, was $12,608.67 (as reflected in the letter and property tax bill sent to Container Components and attached as an exhibit to Wax's declaration—not $12,068.67 as listed in the declaration).

We also note the documentation of property taxes and insurance premiums due includes a pre-September 2011 request for payment of Container Components' pro rata

the premises, San Fernando Associates applied the security deposit in the amount of $13,693 against the $27,797.38 in rent then outstanding (excluding late charges and interest), reducing the amount of outstanding rent due under the lease to $14,104.38 (excluding late charges and interest). Then, in May 2013, San Fernando Associates received one additional payment in the amount of $3,408[7] which reduced the amount of rent outstanding and due under the lease to $10,696.38 (excluding late charges and interest).

According to Wax's declaration, because Container Components had failed to timely pay rent due under the lease for November 2011 through December 2012 (except June 2012), San Fernando Associates assessed additional late charges in the amount of 10 percent of each payment not received within 5 days of the due date for a total of $19,991.34 (as reflected in another attached schedule) for this period of time. Further, as provided under the lease, because Container Components failed to surrender the premises in good condition and failed to remove its lessee owned alterations and utility installations, San Fernando Associates was entitled to recover $11,143 for the repair and restoration costs documented in supporting exhibits. These amounts totaled $57,283.94. In addition, as the lease (as well as the guaranty) provided for attorney fees, San Fernando Associates sought attorney fees in the amount of $3,562 and costs of $600 for a total of $60,845.94.[8]

---

share of property taxes in the amount of $12,289.52 and a pre-September 2011 request for payment of its pro rata share of the insurance premium in the amount of $2,418.68 for a total of $14,708.20—evidence of the parties' course of conduct with respect to property tax payments and payments of insurance premiums.

[7] There is no dispute that Container Components made one payment to San Fernando in May 2013 in the amount of $3,408. The exact date of this payment is variously described in the record as May 15, 2013, May 21, 2013 or May 22, 2013. To avoid confusion, the payment is referred to as the "May 2013" payment.

[8] The correct total of these three amounts is $61,445.94 (a difference of $600—the cost amount); the applications for right to attach orders specified the attorney fee amount as $3,500 for a total of $61,383.94.

8

*Container Components' and the Taylors' Opposition to the Applications for Right to Attach Orders.*

In their opposition, Container Components, Craig Taylor and Darlene Taylor argued San Fernando Associates had agreed to release the Taylors from their personal guarantees upon payment of $46,608 in past due rent, this amount had been paid and the Taylors had been released. In addition, they argued, San Fernando Associates had agreed in writing to waive all late charges, but its claim included $35,444.64 in late charges.[9] Further, San Fernando Associates was not entitled to attorney fees as there had been no determination of a prevailing party.

According to Craig Taylor's supporting declaration, San Fernando Associates' statement to Container Components (attached as an exhibit to his declaration) indicated Container Components had paid 15 monthly payments of $2,700 (a total of $40,500) plus another payment of $2,868 on January 2, 2013 toward past due rent, and after crediting its original security deposit in the amount of $13,693, its payments and credits totaled $57,131 (actually $57,061)—exceeding the $46,608 amount required for the release of the personal guarantees.[10]

---

[9] San Fernando Associates filed objections to Craig Taylor's declaration and exhibit in this regard, and the trial court sustained the objections.

[10] According to the statement attached as Exhibit A to Taylor's declaration, San Fernando Associates claimed Container Components owed $24,707.38 (without including late charges) as of February 5, 2013. More particularly, after crediting Container Components' security deposit ($13,693) to the outstanding "Past Due Rent" balance on January 15, 2013, the balance identified is $13,564.38, and then after adding $11,143 for enumerated "refurbishing/restoration costs," the total balance listed is $24,707.38. We note that according to the "Past Due Rent" summary attached as Exhibit 9 to Wax's declaration, the balance as of January 15, 2013 (after crediting the security deposit) was $14,104.38. The difference of $540 is attributable to transposition of the property tax payment due on December 1, 2012 in Exhibit 9 to Wax's Declaration; as evidenced by the attached property tax bills and requests for payment from Container Components, the correct amount was $12,608.67 as stated in the statement Container Components says it received from San Fernando Associates as of February 2013. Exhibit

*Reply.*

San Fernando Associates argued Container Components had failed to explain how it had arrived at its calculation, but its effort to "parse out" its payments in order to release the personal guarantees was "based on the flawed theory that the $13,693.00 security deposit and [May 2013] payment of $3,408.00 should have been applied *first* against the past due rent stated in the Second Addendum, and *then* against the other current past due rent items, such as property taxes and insurance premiums." (Original emphasis.) "The release of the personal guarantees was expressly conditioned upon [Container Components'] payment of *all* of the stated past due rent. Because [Container Components] failed to satisfy this condition, the personal guarantees remain in full force and effect." By San Fernando Associates' calculations, Container Components' payments fell "at least $3,240 short in satisfying the condition for release of the personal guarantees" (although it also stated in its reply "a balance of $3,408 remained unpaid").

In addition, San Fernando Associates argued, Container Components and the Taylors had presented no admissible evidence of an agreement to waive late charges and had conspicuously omitted the "preliminary summary of amounts owed" attached as an exhibit to the email Taylor purported to reference so that it was impossible to know whether there were other material terms "such as a condition precedent requiring repayment of all past due rent" for any waiver of late charges. Further, Taylor's assertion late charges were waived in exchange for Container Component's agreement for early surrender of the premises was contradicted by the evidence the parties had previously agreed (in June 2012) Container Components would vacate the premises no later than December 31, 2012; then, Container Components informed San Fernando Associates it would be unable to vacate the premises by December 31, 2012, and San Fernando

9 to Wax's declaration also accounts for Container Components' subsequent May 2013 payment of $3,408, resulting in a total "past due rent" balance of $10,696.38 (not including late charges) as of August 28, 2013.

Associates agreed to *extend* the vacation date to January 15, 2013 as an accommodation to Container Components.

*Continuance.*

On the date set for hearing, counsel appeared for the hearing on the application and petition for the writ of attachment. Because San Fernando Associates' reply had not been properly served, however, the hearing was continued to November 4.

*The "Post-Lawsuit Tender" and Supplemental Brief.*

Two weeks later (and two months after the complaint was filed) on October 18, 2013, counsel for Container Components sent counsel for San Fernando Associates a check in the amount of $3,408 along with a letter stating: "This check is tendered to your client for the sole purpose of paying in full what your client contends is the remaining balance due on "Past Due Rent" of $46,608 pursuant to Paragraph (3) of the Second Addendum dated September 30, 2011." "Notwithstanding the disagreement over the amounts that are properly due [San Fernando Associates], there can be no disagreement my clients have now paid sufficient sums to satisfy the condition for release of the Personal Guarantees of Craig and Darlene Taylor." Pursuant to Civil Code section 1479, defense counsel demanded application of the enclosed payment to the extinction of the guarantors' obligation and dismissal of the Taylors from the action.

Plaintiff's counsel responded that defense counsel's reliance on Civil Code section 1479 was misplaced as the Taylors and Container Components were in breach and San Fernando Associates had filed suit against them. Consequently, the Taylors had no right to insist on application of the payment to release their guarantees.

On October 29, acknowledging the trial court had told the parties no additional papers were to be filed, defense counsel filed a "request to file supplemental evidence and argument." Citing the attached copy of the check in the amount of $3,408 as well as defense counsel's and plaintiff's counsel's correspondence, Container Components and the Taylors again argued the guaranty had been released.

11

*The Trial Court's Ruling.*

After hearing the parties' argument (and sustaining San Fernando Associates' objections to Craig Taylor's declaration and supporting evidence), the trial court granted the applications.[11] The trial court concluded that San Fernando Associates had established the probable validity of its claims for breach of lease and breach of guaranty. The trial court concluded the Taylors had failed to establish satisfaction of the condition necessary for release of the personal guarantees and had not presented admissible evidence to establish an agreement between San Fernando Associates and Container Components or the Taylors to waive entitlement to collect late charges under the lease. The trial court noted Container Components and the Taylors had filed their supplemental brief in direct contravention of the court's advisement which would justify the court's refusal to consider it, but even after considering the supplemental brief, the trial court concluded the applications were properly granted for the reasons set forth in the tentative ruling (and plaintiff's counsel's letter).

Craig and Darlene Taylor appeal.[12]

## DISCUSSION

*Applicable Law and the Standard of Review.*

"'"'Attachment is an ancillary or provisional remedy to aid in the collection of a money demand by seizure of property in advance of trial and judgment."'" [Citation.] California's Attachment Law (Code Civ. Proc., § 482.010 et seq.)[] is purely statutory

[11]    The trial court indicated the writs of attachment would not be issued until San Fernando Associates posted an undertaking pursuant to sections 484.090, subdivision (b), 489.210 and 489.220 in the amount of $10,000 as to each guarantor.

   The right to attach orders and orders for issuance of writs of attachment were issued on November 20, 2013 as to the Taylors (and on November 26, 2013, as to Container Components), and the writs of attachment (in the amount of $61,383.94 as to all three defendants) were issued on December 5, 2013.

[12]    Container Components did not appeal.

12

and is strictly construed.  [Citation.]"[13]  (*Kemp Brothers Construction Inc. v. Titan Electric Corp.* (2007) 146 Cal.App.4th 1474, 1476, fn. omitted.)  As relevant here, a plaintiff seeking a right to attach order must establish the "probable validity" of the claim on which the attachment is based.  (§ 484.090, subd. (a)(2).)  "A claim has 'probable validity' where it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim."  (§ 481.190.)  In determining probable validity, the court "must consider the relative merits of the positions of the respective parties and make a determination of the probable outcome of the litigation."  (*Loeb & Loeb v. Beverly Glen Music* (1985) 166 Cal.App.3d 1110, 1120.)

To the extent this appeal involves the interpretation of contract documents (the lease, addenda and guaranty), "[i]t is 'solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence.'" (*McCrary Construction Co. v. Metal Deck Specialists, Inc.* (2005) 133 Cal.App.4th 1528, 1535 (*McCrary*), citing *Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865.) "Where the facts are undisputed, we review the trial court's application of law independently.  [Citations.]  However, 'where extrinsic evidence has been properly admitted as an aid to the interpretation of a contract and the evidence conflicts, a reasonable construction of the agreement by the trial court which is supported by substantial evidence will be upheld.'  [Citation.]"  (*McCrary, supra*, 133 Cal.App.4th at p. 1535.)

Ordinarily, the objective intent of the contracting parties is a legal question determined solely by reference to the contract's terms.  (*Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1126 (*Wolf*), citing § 1639 ["[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible . . ."]; Civ. Code, § 1638 [the "language of a contract is to govern its

---

[13]    All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

interpretation . . ."].) "The court generally may not consider extrinsic evidence of any prior agreement or contemporaneous oral agreement to vary or contradict the clear and unambiguous terms of a written, integrated contract." (*Wolf, supra,* 162 Cal.App.4th at p. 1126, citing § 1856, subd. (a), italics added, further citations omitted.) However, the parol evidence rule "does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in Section 1860, or to explain an extrinsic ambiguity or otherwise interpret the terms of the agreement . . . ." (§ 1856, subd. (g).)

*Because San Fernando Associates Demonstrated the Probable Validity of its Claim, the Taylors Have Failed to Demonstrate Error in the Trial Court's Orders.*

According to Craig and Darlene Taylor, as a simple mathematical matter, Container Components made payments exceeding the $46,608 in accrued past due rent necessary for release of their obligations as guarantors, and San Fernando Associates' own supporting documentation compels this conclusion. In the Second Addendum to the Lease, they argue, the parties agreed: "In addition to the monthly rent set forth above [$12,836 (comprised of $12,500 in base rent plus $116 for landscape maintenance, $220 for water service and waiving the four remaining amortized payments for tenant improvements)], [Container Components] will pay $2,673 or more per month which shall be applied to the past due rent balance of $46,608." The parties further agreed: "Upon the repayment of the past due rent amount, [San Fernando Associates] agrees to release the two guarantors shown below [Craig and Darlene Taylor] from their personal guarantees of the lease."

The Taylors argue the schedule attached to Wax's declaration "is easily misinterpreted as it pertains to satisfying the release of the personal guarantees because it incorporates both current and past due rent[, and] not just the past due sum of $46,608 required for release of the guarantees. Release of the personal guarantees was not based upon payment of current rent that might subsequently become past due. The language in

14

[Paragraph] 3 of the Second Addendum is clear that release was conditioned upon payment of $46,608 . . . ."

In other words, by the Taylors' calculation (and as evidenced by Exhibit 9 to Wax's declaration), Container Components made 15 monthly payments in the amount of $15,536 (of which San Fernando Associates applied $12,836 to current rent and $2,700 to past due rent) between September 16, 2011 and December 5, 2012; it made another payment on January 2, 2013 for December rent (12/16/13 to 12/31/13) in the amount of $9,286 ($6,418 applied to the current (half-month's) rent and $2,868 to past due rent); it was entitled to a credit of $13,693 for its security deposit; and it made another payment of $3,408 in May 2013.[14] Adding $40,5000 (15 times $2,700—the portion of each monthly payment applicable to past due rent) plus $2,868 (the portion of the final monthly payment for past due rent) plus $13,693 (the security deposit) and $3,408 (the May 2013 payment) totals $60,472—more than $46,608—so they satisfied the condition for release of the guaranty.

Taken together, the documents making up the parties' agreement support San Fernando Associates' position, not the Taylors'. According to the Second Addendum, "*In addition to the monthly rent* set forth above, *you* [Container Components] *will pay $2,673.00 or more per month which shall be applied to the past due rent balance of $46,608.00*. The latter shall be amortized without interest accruing. Upon the repayment of the past due rent amount, the Lessor [San Fernando Associates] agrees to release the two guarantors shown below [Craig and Darlene Taylor] from their personal guarantees of this Lease." (Italics added.)

Under the Lease and Addendum, Container Components still had an ongoing obligation to pay its pro rata share of property taxes and insurance premiums, but it paid nothing toward these obligations (also defined as "rent" under the Lease) after entering

---

[14]     Every one of these monthly payments except for June 2012 was late.

into the Second Addendum.  Even assuming as the Taylors argue that these additional sums were not to be included in the past due balance to be paid before the Taylors could be released from their obligations under the Guaranty of Lease, San Fernando Associates had no obligation to credit the security deposit or the May 2013 payment toward the past due amount of $46,608.  The security deposit was meant to secure Container Components' obligations under the Lease and was properly applied against the past due obligations other than the sum stated in the Second Addendum, such as property taxes and insurance premiums.  The Lease expressly stated the security deposit was not a prepayment of any of the Lessee's obligations.  Furthermore, according to the Lease, rent was due on a monthly basis, and time was of the essence.

Likewise, there is no evidence in the record, nor did the Taylors argue in the trial court that the May 2013 payment was meant to apply as a credit against the accrued past rent due under the Second Addendum.  Once the Lease had terminated and Container Components was no longer making monthly payments to which the Second Addendum applied, San Fernando Associates was permitted to credit sums paid long after Container Components had ceased monthly payments to the outstanding amounts still owed to them.  Although the Taylors argued that those outstanding amounts owed did not include property taxes, insurance premiums and could not include any "waived" late charges, in May 2013 Container Components still owed San Fernando $11,143 for Container Component's failure to surrender the property in good condition, and for repair and restoration costs.  Those repair and restoration costs were still owed to San Fernando as of May 2013, and San Fernando was free to apply the $3,408 May 2013 payment towards those costs.

Civil Code section 1479 does not compel a different result because the parties' agreement specifically addressed the order in which payments would be applied. (*Sunlight Electric Supply Co. v. Pacific Homes Corp.* (1964) 226 Cal.App.2d 110, 117 [section 1479 is not an "inflexible mandate"; the "obvious purpose of the Legislature was to leave the field of choice wide open to the parties and to require application of the

16

guidelines of the section only where the intent or desire of the parties could not be ascertained even generally"].) While the overage amount included with the monthly rent payment was to be paid toward the past due balance, the Lease (in Paragraph 4.2) otherwise authorized San Fernando Associates to apply payments first to late charges and attorney fees, then accrued interest, then to base rent and operating expenses and finally to any other outstanding charges or costs.

Leaving to one side the minor mathematical discrepancies in the parties' calculations, San Fernando Associates documented the amount it sought under the Lease, Addenda and Guaranty, and the Taylors (and Container Components) presented no admissible evidence to undermine its claim. It follows that the orders are properly affirmed.

## DISPOSITION

The orders are affirmed. San Fernando Associates is to recover its costs on appeal.


WOODS, Acting P. J.


**We concur:**


ZELON, J.                                    FEUER, J.[*]


---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17