Filed 1/21/16  Sanchez v. Maxwell CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| GLEN RICHARD SANCHEZ, | B260981 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. KC065331) |
| v. | |
| TREVOR COLE MAXWELL et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Randy Rhodes, Judge.  Affirmed.

Carrazco Law, Angel Carrazco, Jr., and Frank V. Arebalo for Plaintiff and Appellant.

Hollingshead & Associates, Janis L. Hulse and John Hollingshead for Defendants and Respondents.

_____

Glen Richard Sanchez (Sanchez) was allegedly injured when his pick-up truck was struck from behind by another pick-up truck driven by Trevor Cole Maxwell (Maxwell) and owned by Maxwell's Backhoe, Inc. (Maxwell's Backhoe). The president of Maxwell's Backhoe, Inc is Randy Maxwell (collectively, with Maxwell and Maxwell's Backhoe, the Defendants). The Defendants conceded liability—that is, they did not deny that they were responsible for causing the accident. Defendants, however, did contest, inter alia, whether the accident caused an injury to Sanchez's lower back. The jury returned a special verdict in favor of Defendants, finding that their negligence was not a substantial factor in causing Sanchez's alleged injury and damages. The trial court denied Sanchez's subsequent motion for a new trial. We affirm, finding the jury's verdict was amply supported by the evidence and that the trial court properly denied Sanchez's motion.

## BACKGROUND

### I. The accident

On July 14, 2014, at approximately 5:30 a.m., Sanchez drove west on the I-10 freeway. Sanchez drove a pick-up truck, a Ford F-150, in the far left lane, the number one or "fast" lane. Maxwell trailed approximately three to four car lengths behind Sanchez. Weather conditions were clear and dry. As Maxwell crested Kellogg Hill, he slowed his vehicle, a Ford F-350 pick-up truck, from approximately 55-60 miles per hour to 30-40 miles per hour. As Sanchez and Maxwell approached the Covina area, traffic became more congested; the increasing congestion caused Sanchez to brake, which caused Maxwell to brake his vehicle as well. Driving a larger, heavier truck, Maxwell could not stop in time; he hit Sanchez's truck from behind and pushed Sanchez's truck, in turn, into a third pick-up, a Toyota Tacoma, which was directly in front of Sanchez's vehicle.

After the accident, while waiting for the highway patrol to arrive, Maxwell talked with and observed Sanchez for approximately 30 minutes; at no time during that period did Sanchez tell Maxwell that he was injured or appear to be injured. During this same

2

30-minute period, Maxwell also observed the third pick-up; its damages appeared to be limited to "light scratches." The driver of the third vehicle never made a claim against or demanded compensation from the Defendants.

## II. The litigation

On December 27, 2012, Sanchez filed suit against the Defendants, alleging a single cause of action, negligence. On February 25, 2013, the Defendants answered, denying generally all allegations in the complaint and asserting various affirmative defenses.

On October 24, 2014, after hearing five days of testimony, the jury began and concluded its deliberations, returning a verdict for the Defendants. With regard to the first and case-determinative special verdict question, the jury found by a vote of 9-3 that the Defendants' negligence was not a substantial factor in causing Sanchez's alleged damages. Judgment was entered on October 27, 2014.

On November 10, 2014, Sanchez moved for a new trial, arguing that the jury was "required" to answer the first special verdict question in the affirmative—that is, that the Defendants' negligence was a substantial factor in causing Sanchez's injuries. The Defendants opposed the motion, arguing in the main that the jury's finding with respect to causation was supported by the evidence, including, inter alia, Sanchez's problematic and often contradictory testimony.

On December 19, 2014, the trial court denied Sanchez's motion, explaining, "The jury had sufficient evidence to support the verdict. Court also indicates that inferences and evidence show that plaintiff and his witnesses had credibility issues to plaintiff's claims of injury being caused by the accident. The plaintiff failed to produce better proof or evidence at trial. Court finds no good cause to set aside the verdict and retry the case." On December 24, 2014, Sanchez timely appealed the judgment and the order denying a new trial.

3

**DISCUSSION[1]**

On appeal Sanchez contends there was insufficient evidence to support the verdict and, as a result, a new trial was warranted. We find no merit in either contention.

**I.     The judgment was supported by sufficient evidence**

Sanchez advances two related arguments concerning the judgment: (1) by stipulating to liability, Defendants also stipulated to causation and, as a result, the only issue in dispute was the amount of Sanchez's damages; and (2) there was no substantial evidence to support the jury's finding that Defendants' negligence was not a substantial factor in causing Sanchez's alleged damages.

> A.      *The Defendants never stipulated to causing Sanchez's alleged injuries*

Sanchez contends that the Defendants "never contested liability (including causation)," that they "admitted liability in this case (including causation)." According to Sanchez, the defendants "knew that there would be a verdict in favor of the Plaintiff but they were hoping to keep the amount of the verdict as low as possible. Everyone knew that the case was just about the extent of damages and that this was the only issue the Jury was to decide. It is written all over the record in this case." Sanchez's contention is premised on the following wording from the parties' joint statement of the case: "The Maxwell Defendants have admitted that they were negligent and that they caused the collision." (Underline and boldface omitted.) Sanchez, in other words, equates causation

---

[1] In their respondents' brief, the Defendants assert that Sanchez "did not present the entire record to the Court of Appeal for review," noting, inter alia, that certain "transcripts were not presented to [the] Court of Appeal on all evidence, including hearings on motions in limine, exhibits, and first day of voir dire, and reading of instructions." The Defendants, however, did not seek to augment the record, as was their right. (See Cal. Rules of Court, rule 8.155(a); Ct. App., Second Dist., Local Rules, rule 2(b), Augmentation of record.) Because the Defendants have not only waived their right to augment, but have failed to identify any prejudice from the missing records, we decline to order sua sponte that the record be augmented.

4

of the collision with causation of his alleged injuries and damages. Sanchez's equation is without factual or legal support.

Sanchez sued the Defendants for negligence. "'The elements of a cause of action for negligence are well established. They are "(a) a *legal duty* to use due care; (b) a breach of such legal duty; [and] (c) the breach as the *proximate or legal cause* of the resulting injury."'" (*Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917.) By stipulating to liability, the Defendants conceded the first two elements—that is, they admitted that they owed Sanchez a duty of care, which they breached when Maxwell failed to stop his truck in time. However, the Defendants did not stipulate to the third element, that they caused Sanchez's alleged damages.

Stipulations as to liability but not to causation are common in auto accident cases, because "[s]ome acts or omissions accurately classified as 'negligent' (i.e., a breach of defendant's duty of care) do not necessarily have a causal role in motor vehicle accidents." (*Bermudez v. Ciolek* (2015) 237 Cal.App.4th 1311, 1321.) So common are such stipulations that a standard jury instruction has been developed for use at trial, CACI No. 424. The "directions for use" that accompany CACI No. 424 expressly state that it is "intended for cases in which the defendant 'admits' liability, but contests causation and damages." (Use Note to CACI No. 424 (2015 ed.) p. 263.)

Here, the Defendants disputed causation from the very beginning of the case. In their answer to Sanchez's complaint, they specifically denied that Sanchez "has sustained any injury or damage as a result of the conduct alleged against the answering Defendants." Moreover, both the Defendants *and* Sanchez agreed to use CACI No. 424 as one of the jury instructions. As modified by the parties and as given by the trial court, CACI 424 clarifies that while the Defendants breached their duty of care to Sanchez they dispute whether that breach caused any injury to Sanchez: "Glen Sanchez claims that he was harmed by [the Defendants'] negligence. [The Defendants] agree[ ] that he [sic] was negligent, but denies that the negligence caused Glen Sanchez any harm/the full extent of the harm claimed by Glen Sanchez. [¶] To establish his claim against [the Defendants],

5

Glen Sanchez must prove both of the following:  [¶]  1.  That Glen Sanchez was harmed; and  [¶]  2.  That [the Defendants'] negligence *was a substantial factor in causing Glen Sanchez's harm*."

Evidence that the Defendants disputed causation and that Sanchez was well aware of the Defendants' position before and during trial is also found in the verdict form which the parties jointly negotiated/litigated, the first question of which asks whether the Defendants' negligence was a "substantial factor in causing damages of Glen Richard Sanchez.  Sanchez's counsel acknowledged this dispute about the consequences of the collision in his opening argument and even went so far as to quote from the verdict form in his closing argument.

In short, Sanchez's first argument with respect to the judgment is utterly without merit.  The Defendants never stipulated to causing Sanchez's alleged injuries or damages.  Moreover, Sanchez knew that Defendants were contesting causation when he agreed to CACI No. 424, even if not well before then.  To assert such an argument now, on appeal, is disingenuous at best.  However, because there is no evidence that this argument was advanced for an improper purpose, we decline to impose any sanctions.  (See *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650–651.)

> B.      *The judgment was supported by substantial evidence*
>> 1.      STANDARD OF REVIEW

With regard to Sanchez's claim of insufficiency of the evidence, "we apply the familiar substantial evidence standard of review:  We view all of the evidence in the light most favorable to the judgment, drawing every reasonable inference and resolving every conflict to support the judgment. [Citation.]  'Even in cases where the evidence is undisputed or uncontradicted, if two or more different inferences can reasonably be drawn from the evidence this court is without power to substitute its own inferences or deductions for those of the trier of fact . . . .'" (*Jonkey v. Carignan Construction Co.* (2006) 139 Cal.App.4th 20, 24.)  "The term 'substantial evidence' means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion; it is

6

evidence which is reasonable in nature, credible, and of solid value.  [Citation.]"  (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1433.)

2.    AMPLE EVIDENCE SUPPORTED THE JURY'S FINDING

The jury was instructed that the Defendants' negligence was "not a substantial factor in causing harm if the same harm would have occurred without that [negligence]."  The court also instructed the jury that Sanchez was "not entitled to damages for any physical or emotional condition that he had before" the accident.  In addition, the court instructed the jury that it could disbelieve a witness's testimony if it found the testimony to be lacking in credibility.

As summarized below, the jury was presented with evidence which would lead them to reasonably conclude that the auto accident did not cause Sanchez's disc herniation, that the condition in his lower back existed prior to the accident and that the low speed nature of the accident did not exacerbate the condition.  Substantial evidence was also presented to allow the jury to discount significantly Sanchez's testimony about his alleged injuries and damages.

First, the accident was not a high-speed violent collision that substantially damaged all of the trucks involved and sent their drivers to the hospital.  Instead, there was evidence that the accident occurred at a low speed—the highway patrol officer who was dispatched to the scene testified that airbags are designed to deploy whenever a collision occurs at more than five miles per hour and that none of the trucks' airbags deployed.  Moreover, this same independent witness testified that each of the trucks suffered only "minor," not "major" or even "moderate," damage and that all three were driven, not towed, away.  In addition, this independent witness, who was required to note any injury to any of the parties involved in the accident, no matter how minor the injury might be, described the accident as a noninjury accident in his report.

Second, an alternative explanation for Sanchez's alleged injury was offered by the Defendants' medical expert.  Although Sanchez complained of various aches and pains in his shoulder, ankle, wrist and lower back in the aftermath of the accident, the only injury

at issue in the instant case was an injury to Sanchez's lower back. The back injury, as revealed from a MRI scan, involved some "disc protrusions" in his lower back, but not the more serious disc herniations. As explained by the Defendants' medical expert, a board-certified orthopedic surgeon who specializes in "spine surgery and spine medicine," Sanchez's disc protrusions were entirely consistent with a 56-year old man or woman—"this is an average film of everybody that's 56." Not only did the MRI scan show "normal findings" for Sanchez's age group, but the changes to Sanchez's back were "natural," that "we all are going to have these changes. So if you were to scan him the day before the accident, you're going to see these same changes."[2] In addition, the Defendants' expert testified that the pain that Sanchez currently experiences in his lower back is due, not to the accident, but due to the fact that his work requires him to do "a lot of bending squatting, sitting, [and is subject to] vibration."

Third, Sanchez's testimony raised doubts about his credibility as a witness. For example, Sanchez told his doctors that Maxwell's truck was traveling at 50 or 60 miles per hour when it struck his vehicle, but conceded on cross-examination that he did not know how fast Maxwell's vehicle was traveling when it rear-ended his vehicle; he further testified that the accident occurred at a high rate of speed even though the collision produced only a dime-sized dent in the left quarter panel of his truck. In addition, Sanchez did not disclose during discovery information regarding various prior injuries, including injuries suffered when he was riding his motorcycle, injuries which put him in the hospital for six weeks, and he also failed to tell his treating doctors about those same

---

[2] In rebuttal, Sanchez elected to rely on the testimony of his treating doctors, doctors to which he was referred to by his lawyers, a fact which the jury could find weakened their own credibility. In addition, there was testimony from one of Sanchez's lawyer-referred medical providers that Sanchez, as a personal injury plaintiff, was charged approximately three times as much for one of his epidural injections ($14,500) as the same provider would charge a worker's compensation claimant ($4,500-$5,000). With regard to the potential "padding" of medical bills, Sanchez also admitted on cross-examination that he saw two of his lawyer-referred doctors on the same day.

8

prior injuries. Moreover, Sanchez initially testified that he injured his right ankle, right wrist, and right shoulder in the instant accident. On cross-examination, however, it was revealed that he told the first doctor he saw after the accident that he injured his left shoulder and ankle and did not injure either wrist. In a similar contradictory manner, Sanchez testified on direct examination that his back injury forced him to stop coaching his son's baseball team; on cross-examination, however, he conceded that he still coached his son's team.

In sum, the jury's noncausation finding was supported by substantial evidence.

## II. The motion for new trial was properly denied

"The powers of a trial court in ruling on a motion for new trial are plenary. The California Supreme Court has held that the trial court, in ruling on a motion for new trial, has the power 'to disbelieve witnesses, reweigh the evidence, and draw reasonable inferences therefrom contrary to those of the trier of fact' [citation], that the court sits as 'an independent trier of fact' [citation], and that it must 'independently assess[ ] the evidence supporting the verdict' [citation]. The trial judge has 'to be satisfied that the evidence, as a whole, was sufficient to sustain the verdict; if he was not, it was not only the proper exercise of a legal discretion, but his duty, to grant a new trial.' [Citation.]" (*Barrese v. Murray* (2011) 198 Cal.App.4th 494, 503.)

"[A] motion for new trial predicated on the ground[ ] of the insufficiency of the evidence . . . is addressed to the sound discretion of the trial judge; his action in refusing a new trial will not be disturbed on appeal unless it is affirmatively shown that he abused his discretion. [Citation.]" (*Charles D. Warner & Sons, Inc. v. Seilon, Inc.* (1974) 37 Cal.App.3d 612, 616.) "The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712, fns. omitted.)

9

Here, the experienced and able trial judge in this matter found that there was sufficient credible evidence to support the verdict and that the jury was reasonable both in believing the witnesses it apparently believed and in disbelieving the witnesses it apparently disbelieved in reaching its verdict.  Because, as discussed in the preceding section, we find that the jury's verdict was supported by substantial evidence, we further find that the trial court's decision to deny Sanchez's motion for a new trial was neither arbitrary nor capricious, but reasoned and reasonable.  In short, there was no abuse of discretion in denying Sanchez's motion for a new trial.

## DISPOSITION

The judgment is affirmed.  Trevor Cole Maxwell, Randy Maxwell and Maxwell's Backhoe, Inc. shall recover their costs on appeal.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


CHANEY, Acting P. J.


LUI, J.

10